## ALICE J. ANDERSON v. NATHAN J. HALL, Appellant.

### Division Two, February 16, 1918.

1. **CONTRACT: Sale of Land.** The whole of a contract for the conveyance of real estate must be in writing. Its terms cannot be eked out by parol.

2. ———: ———: **Acceptance.** A definite offer to pay $54,000 for a farm, $20,000 in cash, balance in one and two years, evidenced by purchaser's notes, secured by vendor's liens, contained in a letter to the vendor's agent, is definite enough, and if accepted, even by parol, is binding on the vendee.

3. ———: ———: **Letter to Own Agent: Delivery.** A letter from the purchaser to his secretary, offering to buy a certain farm at a designated price, "if I can raise the money," is not binding on him, even if it could be held to be definite in terms, because not delivered to the vendor or the vendor's agent. It is not a "memorandum or note" properly signed by the party to be charged and accepted by the other, such as the statute contemplates. Nor is it a written contract, because not delivered to the vendor.

4. ———: ———: ———: ———: **Physical Possession by Other Party.** A letter by the purchaser to his secretary, in which, in response to a letter from the vendor's agent, he expresses his willingness to buy a farm upon definite terms, which by telegram are accepted by said vendor's agent, cannot rightfully pass into the possession of the vendor without the purchaser's consent or direction, and if in some undisclosed way the vendor obtains physical possession of it and offers it at the trial the possession is not lawful. Delivery of a written contract cannot be made by such methods.

5. ———: ———: **Memorandum and Written Contract: Difference.** A memorandum or note properly signed by the party to be charged and accepted by the other, even though the acceptance be oral and even though it remain after acceptance in the possession of the person so signing it, will bind the person to be charged to keep the contract for the purchase of land. But there is a wide difference between an oral contract to purchase land followed by a written memorandum, signed by one of the parties and accepted by the other, and a written contract. A memorandum presupposes a previous oral contract; the written contract, or one made by letters, does not. In order for a written contract to be complete, it must, besides being signed by the person to be charged, be delivered; and if not delivered to the other party, or his authorized agent, it is not binding on the signer.

Appeal from Jackson Circuit Court.—*Hon. Thomas B. Buckner,* Judge.

REVERSED AND REMANDED.

*Otto Basye* and *Ben T. Hardin* for appellant.

(1) There is no contract in this case that satisfies the Statutes of Frauds. No land is described, nor is the county or the state named. The essentials of a contract involving the Statute of Frauds are three, as laid down by this court: "First, the parties; second, the subject-matter; third, the consideration or price. Absent any one of these ingredients, there is no contract." Kelley v. Thuey, 143 Mo. 435; Fox v. Courtney, 111 Mo. 147; Johnson v. Fecht, 185 Mo. 335; Ringer v. Holtzclaw, 112 Mo. 519; Boyd v. Paul, 125 Mo. 9; King v. Wood, 7 Mo. 390; Dixon v. Finnegan, 182 Mo. 111 ; Halsell v. Renfro, 202 U. S. 287; Preston v. Preston, 95 U. S. 200; Williams v. Morris, 95 U. S. 444. (2) In real estate contracts the rule is well established that parol testimony cannot supply what the written contract lacks. The statute changed the common law in that respect. The written contract must be complete in itself, or refer to some external standard, such as a public record, in order to let in parol testimony. Boyd v. Paul, 125 Mo. 9; Cement Co. v. Kreis, 261 Mo. 160; Reigart v. Coal Co., 217 Mo. 142; Culligan v. Wingerter, 57 Mo. 241; Kennedy v. Kennedy, 57 Mo. 73; Smith v. Snell, 82 Mo. 215; Fireproofing Co. v. Fireproofing Co., 177 Mo. 559; Springer v. Kleinsorge, 83 Mo. 152; Briggs v. Munchon, 56 Mo. 467; Wiley v. Roberts, 27 Mo. 388; McKeag v. Piednor, 74 Mo. App. 593; Schultz v. Hunter, 188 Mo. App. 520; Mason v. Small, 130 Mo. App. 249. There is no sufficient offer in this case and no sufficient acceptance of any alleged offer. The acceptance must be in the exact terms of the offer in order to constitute a binding contract. Sarran v. Richards, 151 Mo. App. 656.

*Joseph S. Rust* for respondent.

(1) All the letters and telegrams may be taken together in determining as to sufficiency of the description. Anderson v. Hall, 188 S. W. 79; Leesley v. Fruit Co., 162 Mo. App. 195; Peycke v. Ahearns, 98 Mo. App. 459. (2) Parol evidence may be introduced to make the contract more definite and certain where the uncertainty grows out of latent ambiguity. If the contract showed on its face that there were two farms of same name it would be a patent ambiguity. Black v. Crowther, 74 Mo. App. 480; Atkins v. Moran, 67 Mo. 100; Martin v. Kitchen, 195 Mo. 477; Roden v. Helm, 192 Mo. 82; Turner v. Dixon, 150 Mo. 416; (3) Under the Statute of Frauds the writing as to real estate need only to be signed by the party to be charged. The proposal may be accepted by parol. R. S. 1909, sec. 2783; Martin v. Grimes, 88 Mo. 478; Smith v. Wilson, 160 Mo. 657. If memorandum is signed by the party to be charged the acceptance may be by parole. Black v. Crowther, 74 Mo. App. 480.

ROY, C.—Plaintiff recovered judgment against the defendant for $10,160 as damages for the breach of his alleged contract to purchase and pay for a farm. Defendant has appealed.

The case was here on a former appeal and is reported in 188 S. W. 79.

The plaintiff, in writing, leased to J. H. Lipscomb of Kansas City a farm of about 800 acres at Aullville, Lafayette County, in this State, for a term of three years ending on March 1, 1911. In the same writing she gave Lipscomb an option on the land at $36,000, and gave him also the power to sell the farm any time during the lease, he to have all excess over that sum. The evidence on both sides shows that said farm was sometimes called the "Jo Shelby farm," and sometimes called the "Anderson farm."

Defendant was a resident of Kansas City, but spent much of his time looking after his live stock interests in Texas. He had a secretary and financial agent, R. B. Thornton, in Kansas City, who paid his

accounts and furnished defendant's family with money from defendant's funds as they needed it.   Lipscomb took the defendant and defendant's daughter over the farm to inspect it.   He also took Thornton to see it. Lipscomb testified that he was paying Thornton a commission in the matter.   There is no evidence in the case to indicate that defendant knew that his agent Thornton was in the pay of the other side.

We will now set out the correspondence between the parties, giving all the contents of the letters so far as they are material here, and leaving out the remainder.

### Exhibit 2.

May 10, 1909.

Mr. Nathan Hall,
115 Garfield Ave., City.
My dear Mr. Hall: —
From the conversation I had with your daughter, I know that she wants very much the 800-acre farm at Aullville, but I am also satisfied that she will be governed entirely by what you say.

J. H. LIPSCOMB.

### Exhibit 3.

September 18, 1909.

Mr. Nathan Hall,
Junction, Texas.
My dear Mr. Hall:
I suppose, of course, that you have abandoned the idea of purchasing the 800-acre farm, but I would regard it as a great personal favor if you would send me the letter which Mr. White wrote in answer to yours to him asking about the Lafayette County farm.

J. H. LIPSCOMB.

### Exhibit 4.

Junction, Texas, September 26, 1909.

Mr. J. H. Lipscomb,
K. C., Mo.
Dear Sir:
I have abandoned the idea of purchasing Anderson farm at price asked.   If you want to present another offer to Mrs. Anderson I will make you a proposition.   I will give $54,000 for the farm provided I could get possession any time soon in payments as follows:

Anderson v. Hall.

$20,000 down, the balance vendor lien notes payable on or before two years at 5 per cent interest. Complete abstract and titles to be furnished at her expense. If this proposition suits you I will take chances on buying the farm.

N. J. HALL.

## Exhibit 5.

December 15, 1909.

Mr. Nathan Hall,
Richland Springs, Texas.
Dear Sir:

On November 30 I wrote you what I thought was a very persuasive letter but it seems that I was entirely mistaken and you have not even answered it. I do not like to take your failure to answer my letter as a refusal on your part to buy the farm.

J. H. LIPSCOMB.

## Exhibit 6.

January 12, 1910.

Mr. Nathan Hall,
Richland Springs, Texas.
Dear Mr. Hall:

I am not going to take your failure to answer my last two letters as an evidence that you are not interested in the 800-acre farm nor as an evidence that you are opposed to hearing from me.

J. H. LIPSCOMB.

## Exhibit 7.

Feb. 11, 1910.

Mr. Nathan Hall,
Richland Springs, Texas.
My dear Mr. Hall:

If you will pay $56,000 for the 800-acre farm I will give you possession immediately; that is within 30 days, or if you do not care to look after it this year I can allow you $2000 for rent until March 1, 1911. You offered $54,000 for the place. Please let me hear from you at once.

Yours truly,

J. H. LIPSCOMB.

## Exhibit 8.

February 12, 1910.

Mr. Nathan J. Hall,
Richland Springs, Texas.
Dear Mr. Hall:

I cannot keep from insisting on your buying the 800-acre farm in Lafayette County.

J. H. LIPSCOMB.

Anderson v. Hall.

## Exhibit 9.

Richland Springs, Texas, 2-16-10.

Mr. J. H. Lipscomb,
Dear Sir:

· Will say yours of the 2-11-10 came to me yesterday. Now I don't know that I can raise the amount of money necessary to buy the farm, however if the parties will come to my offer I will see if I can raise the money to comply with my offer of 54 thousand dollars. Yours truly,

N. J. HALL.

## Exhibit 10.

Ferbuary 26, 1910.

Mr. Nathan J. Hall,
Richland Springs, Texas.
My dear Mr. Hall:

Your favor of the 16th inst. at hand. I shall undertake to have your proposition accepted. Please notify me, or Mr. Thornton, just how you want the deferred payments. In your last letter you proposed to pay $20,000 cash and the balance in one or two years at 5 per cent. If I can have your proposition accepted, this arrangement as to payments will be satisfactory.

J. H. LIPSCOMB.

## Exhibit 11.

Richland Springs, Texas, 3-2-10.

Mr. R. B. Thornton,
Dear Sir:

Your letter received also one from J. H. Lipscomb in regards to the sale of the Jo Shelby farm. You can say to Mr. Lipscomb that my offer of $54,000, $20,000 cash, balance in one and two years at 5 per cent per annum, he to furnish a complete abstract clear of all liens of all kinds. You may say to him that at the time I made him the offer I had the $20,000 in the bank, but I have been making some investments and it may take me a few days to raise this money, and I do not care to raise it unless I make this deal; and if I make the deal I will want possession at once or by April 1st at least. Now if he can close deal at once you can telegraph me and I will come and raise the money and close the trade. If I hear nothing from you or Mr. Lipscomb I will leave about the 20th for my ranch in Kimball Co. I think this is a bad trade for me as I will have to spend so much money in repairs on this place and if I had not of made the offer I would not make it now. Yours respectfully. In the meantime look around where I can get ten or twenty thousand or $50,000 at 4 per cent on my main street house. If I can get 4 per cent money I will pay all case (?).

Yours respectfully,

N. J. HALL.

## Exhibit 12.

R. C. C. Night Message.　The Western Union Telegraph Company.
K. C., Mo., March 5, 1910.

To Nathan J. Hall, Richland Springs, Texas.

Proposition to purchase Anderson farm at fifty-four thousand dollars is hereby accepted.　Come at once.

J. H. Lipscomb, Agent.

Defendant objected to each and all of those documents as evidence, on the ground that they did not constitute a contract on the part of the defendant to purchase the land.　The objections were overruled.

A few days after the date of said telegram the defendant came home, but refused to proceed with the deal.

At the close of plaintiff's evidence, and again at the close of all the evidence in the cause, the defendant asked an instruction in the nature of a demurrer to the evidence which was refused.

I.　The demurrer to the plaintiff's evidence forces upon our consideration points which were not called to this court's attention on the former appeal.

II.　The whole of a contract for the conveyance of real estate must be in writing.　Its terms cannot be eked out by parol. [Meramec Portland Cement & Mat. Co. v. Kreis, 261 Mo. 160, l. c. 169.]

III.　We will now consider the correspondence between the parties as above set out to see if any contract in writing was agreed upon by the parties.

Exhibit 4 shows an offer by defendant of $54,000 on the terms there named for the "Anderson farm." If that offer had been accepted, even by parol, it would have been binding on the defendant.

Lipscomb in Exhibit 7 refused that offer in effect by making another proposition to the defendant.

Exhibit 9 cannot be considered as a definite offer to take the land at the price named.　That letter says, "Now I don't know that I can raise the amount of

money necessary to buy the farm, however if the parties will come to my offer I will see if I can raise the money to comply with my offer of 54 thousand dollars.'' That language is equivalent, in effect, to saying, ''If you will now take the $54,000 for the place, I will look into my finances and see if I can take the farm at that price.''

Lipscomb, in Exhibit 10, says, ''Please notify me or Mr. Thornton how you want the deferred payments,'' thus showing that he did not understand that defendant had made a definite offer to take the land. In Chapin v. Cherry, 243 Mo. 375, l. c. 401, it was said:

''And as held by this court in the case of Strange v. Crowley, 91 Mo. 287, before a contract is completed or binding upon the parties thereto, there must have been a definite proposal made on the one hand, and an acceptance thereof on the other and that such acceptance must have been unequivocal, unconditional and without variance between it and the proposal made.''

It thus appears that, prior to the letter from defendant to Thornton, Exhibit 11, there was no pending definite offer on defendant's part to take the farm. There had been one which was refused. This whole case then is dependent on the effect to be given to Exhibit 11. That letter was not written to Lipscomb, but to Thornton, defendant's agent. All of defendant's previous letters as to this business had been written to Lipscomb. The defendant says in this last letter that he had received a letter from Thornton and one from Lipscomb. Why wasn's Exhibit 11 written to Lipscomb instead of to Thornton? If that letter had been written to Lipscomb it would have been an offer in writing for the land, which, when accepted, would have bound defendant. But defendant did not take that course. He refrained from writing to Lipscomb, but, instead, wrote to his own agent, Thornton. His letter to Thornton did not, in itself, constitute a written offer to Lipscomb, because it was not to be delivered to Lipscomb, but was to remain in the possession of defendant's agent; in other words,

in defendant's possession. In Steel v. Fife, 48 Iowa, 99, the owner of the land wrote to his agent to offer the land for sale at a certain price. The agent informed plaintiffs that he had the letter containing the offer. The plaintiffs accepted the offer and requested the agent to procure the deed to the property. A deed was forwarded to the agent, but it was not delivered because of some defect in the execution. Plaintiffs then sued for a specific performance. It was there said:

"It is not alleged in the petition, or claimed by counsel for the appellees, that Johnson was the agent of the plaintiffs, but that he was the agent of the defendants. This being true, the delivery of the letter to Johnson could have no other or greater effect than if it had been written and retained in the possession of the defendants. It is unquestionably true that a memorandum, agreement or deed must be executed by the party to be bound, or his authorized agent, and delivered to and accepted by the other party to take the case out of the operation of the statute and its clear intent and meaning."

There is no evidence in this case to indicate that the letter from defendant to Thornton was ever delivered to Lipscomb. The fact that plaintiff offered it in evidence may indicate that she was in possession of it at the trial, but there is no indication as to when she obtained such possession. Even as it is, her possession is merely physicial. She has no lawful possession of it, and has never had. The law gave Thornton no authority as such agent to deliver that letter to plaintiff or her agent. In addition to that, the letter on its face says, "You may say to him," etc. That language plainly indicates the intention that Thornton was to hold possession of the letter and not deliver it to Lipscomb.

It may be here remarked that the defendant did not then know the fact, which was avowed by Lipscomb on the stand, that he, Lipscomb, was paying Thornton a commission. It may be that a timely discovery

of the fact that his trusted secretary and financial agent was in the pay of the other side caused him to proceed no further in the deal.

Our statute provides that "the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing." Let it be granted that, though the contract is oral, if there is a "memorandum or note" of it properly signed by the party to be charged, it will be sufficient. There need be no controversy about the proposition that if two persons meet and orally agree on the terms of the sale and purchase of real estate, and a memorandum of such an agreement is made and signed by one of those persons, such memorandum will bind the person so signing it, even though it may remain in his possession. It is, under the statute, a sufficient memorandum to bind him. But there is no oral contract in this case followed by a written memorandum of it. There is no "memorandum or note" such as is contemplated by the statute.

The difference between a contract in writing and a "memorandum or note" of an oral contract is clearly stated in Lowther v. Potter, 197 Fed. 196, where it is said:

"The statute recognizes that a contract for the sale of real estate and a memorandum or note thereof are two distinct things and requires that one or the other must be in writing. The latter presupposes a previous oral contract; the former does not. Now in a case not involving a memorandum or note of a previous oral contract, but simply whether a written contract for the sale of real estate has been made, there must be a delivery. A delivery is essential to the making of the contract for the sale. Such was the case of Newburger v. Adams, 92 Ky. 26, 17 S. W. 162. In that case the purchaser delivered to the vendor's agents, who, in turn, handed to their principal, the vendor, a written offer to buy. The vendor indorsed on this written offer an acceptance thereof, but changing the terms as to the payment of the purchase

price in a slight particular, sufficient, however, to prevent the making of the contract had there been a delivery without more. The vendor retained the written offer with his acceptance indorsed thereon, and thereafter the purchaser gave verbal assent to the change in terms to the vendor's agents or to the vendor, to which not appearing. Thereafter the vendor tendered a deed in accordance with the contract, and demanded performance on part of the purchaser, and upon his refusal brought suit to enforce it. It was held that he was not entitled to the relief sought because of the non-delivery of the acceptance of the offer. Inasmuch as the purchaser gave his assent to the change in the terms of payment of the purchase price, the case was disposed of the same as if the acceptance had made no change in the terms, so that there would have been a binding contract had the acceptance been delivered.''

That case went to the Circuit Court of appeals where that language was approved. [137 C. C. A. 451.]

For the reasons given the letter from defendant to Thornton was never, in contemplation of the law, delivered to Lipscomb, and, hence was not an offer in writing to Lipscomb to buy the land, and could not be accepted as such an offer.

The judgment is reversed and the cause is remanded.

*White, C.,* concurs.

PER CURIAM:—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All of the judges concur.