JONATHAN KLUDT (Plaintiff), Respondent, v. WILLIAM C. CONNETT, IV, Administrator ad litem of the Estate of FRANK S. BARKS, Deceased; ST. LOUIS UNION TRUST COMPANY, a Corporation, and FOSTER HOLMES, as Trustees under the last Will and Testament of FRANK S. BARKS, Deceased; and FATHER FLANAGAN'S BOYS HOME, Boys Town, Nebraska, Incorporated (Defendants) Appellants, FOSTER HOLMES, as Executor of the ESTATE OF FRANK S. BARKS, Deceased; ANN STROH, ARTHUR H. BARKS, WILBUR J. BARKS, HILA CURTICE HOWARD McGINNESS, and the unknown beneficiaries under a certain trust created by Item 3 of the last Will and Testament of FRANK S. BARKS, Deceased, and the unknown consorts, heirs, devisees, donees, alienees or immediate, mesne or remote, voluntary or involuntary grantees of FRANK S. BARKS, Deceased (Defendants not appealing).—Nos. 38281, 38282.

C. HOMER REDD (Plaintiff) Respondent, v. WILLIAM C. CONNETT, IV, Administrator ad litem of Estate of FRANK S. BARKS, Deceased; ST. LOUIS UNION TRUST COMPANY, a Corporation, and FOSTER HOLMES, as Trustees under the last Will and Testament of FRANK S. BARKS, Deceased; and FATHER FLANAGAN'S BOYS HOME, Boys Town, Nebraska, Incorporated (Defendants) Appellants, FOSTER HOLMES and JONATHAN KLUDT, as Executors under the last Will and Testament of FRANK S. BARKS, Deceased; ANN STROH, ARTHUR H. BARKS, WILBUR J. BARKS, HILA CURTICE HOWARD McGINNESS, and the unknown beneficiaries under a certain trust created by Item 3 of the last Will and Testament of FRANK S. BARKS, Deceased, and the unknown consorts, heirs, devisees, donees, alienees or immediate, mesne or remote, voluntary or involuntary grantees of FRANK S. BARKS, Deceased (Defendants not appealing). Nos. 38283, 38284.—168 S. W. (2d) 1068.

Division One, March 2, 1943.

794

*Monsky, Grodinsky, Marer & Cohen* and *Bryan, Williams, Cave & McPheeters* for Father Flanagan's Boys Home, Boys Town, Nebraska, Incorporated; *Bryan, Williams, Cave & McPheeters* for St. Louis Union Trust Company and Foster Holmes, as trustees under will of Frank S. Barks, appellants.

*Fordyce, White, Mayne, Williams & Hartman, Walter R. Mayne* and *G. Carroll Stribling* for respondents.

*William C. Connett, IV, pro se* as administrator *ad litem* of Frank S. Barks' Estate.

 CLARK, J.—The plaintiffs Kludt and Redd each filed a separate suit for the specific performance of an oral contract for the purchase of shares of the capital stock of the Lincoln Engineering

Company, a corporation; Kludt demanding 8,000 shares and Redd 2,000 shares. Defendants plead the Statute of Frauds as a defense. The chancellor rendered a decree for specific performance in favor of each plaintiff; and, after separate appeals were perfected by different defendants, by stipulation all the appeals and both cases were consolidated and briefed and argued together.

No question arises on the pleadings and the essential facts are not in dispute. Frank S. Barks was the principal owner of the corporation, owning 73,915 shares out of a total of 122,600 shares outstanding. There were only 36 stockholders, all but seven of them being employees of the company. Kludt and Redd were employees, officers and stockholders of the company. On December 6, 1940, Barks directed the preparation of a written statement worded as follows:

"The Congress Hotel

Union Blvd. at Pershing Avenue

Saint Louis

Dec. 6, 1940.

"I, Frank S. Barks, hereby sell and transfer to Jonathan Kludt eight thousand (— 8000 —) shares of stock of the Lincoln Engineering Co. at one dollar ($1.00) per share, in payment for which I accept his demand note in the principal sum of eight thousand dollars ($8,000.00) with interest at $3\frac{1}{2}\%$ (three and one-half per cent) per annum.

Frank S. Barks.

Witness to signature

Foster Holmes

Thomas C. Birdsall."

After the statement had been read by all present, Barks signed it and two of his friends, Holmes and Birdsall, signed it as witnesses. An identical statement, purporting to sell 2,000 shares to Redd on the same terms and at the same price per share, was prepared and signed by Barks and the witnesses. Then Birdsall, in the presence of Barks, placed the statements in an envelope and, after writing on the envelope that it was not to be opened until further instructions of Mr. Barks, gave it to Miss Stroh, private secretary of Barks, telling her "I am going to leave them in your keeping".

On December 19, 1940, Barks met with Kludt and Redd in his apartments and, in the presence of others, recited the contents of the papers which he had signed on December 6th and asked them whether this met with their approval. They both expressed themselves as being well pleased and offered to execute and give him their notes immediately, but Mr. Barks said that wasn't necessary; that Redd was leaving for California in the morning, that he (Barks) and Kludt were going to South America and "the details can be taken care of when we get back to Los Angeles". Other testimony was to the effect that, after December 19th, Mr. Barks stated that he had

sold 8,000 shares to Kludt and ▆▆▆ 2,000 shares to Redd and seemed glad to get this matter taken care of before starting on his trip; also, that long prior to December, 1940, Mr. Barks said he had already fixed it so that most of his key men had bought stock and had paid practically nothing for it and that he was going to arrange for Kludt and Redd to get a sizeable block of the stock. Barks, with Kludt and Birdsall, left for South America about the latter part of December, 1940. He died on the trip before reaching Los Angeles and Kludt and Redd did not execute their notes or receive the stock. After the death of Barks on January 27, 1941, the statements above mentioned, in the sealed envelope, were found in his private box. Both Barks and his secretary had a key to the box, but only his papers were kept there. There was testimony that the fair value of the stock was $12.50 per share on December 19, 1940, and $15.00 per share at the time of trial.

The trial court made a general finding for the plaintiffs on all the issues and made specific findings that: the stock of the company was not listed or sold on stock exchanges and was not readily obtainable except from Barks' estate; that the market value of such stock was not readily ascertainable and plaintiffs' damages could not be ascertained in an action at law; that the stock had a special and peculiar value to plaintiffs because of their connection with the company; that on December 19th the parties adopted the papers of December 6th as a memorandum of the agreement reached for the sale of the stock, and there was no definite agreement as to the time or place for delivery of the stock.

Appellants contend that the Statute of Frauds [Sec. 3355, R. S. Mo. 1939, Mo. R. S. A., p. 636] prevents enforcement of the agreement because the memorandum was executed prior to the date of the agreement; that the memorandum was not delivered and fails to state the time and place of performance; also that there was no mutuality of obligation; that the agreement is nothing but an unexecuted gift and, if it is a contract, respondents have an adequate remedy at law.

▆▆▆ Section 3355, supra, provides: "No contract for the sale of goods, . . . for the price of thirty dollars or upward, shall be allowed to be good, . . . unless some note or memorandum in writing be made of the bargain, and signed by the parties to be charged . . ."

It is undisputed that this section covers the sale of corporate stock. On its face the statute does not require the memorandum to be delivered nor to be executed at the same time as the contract. Undoubtedly a subsequent memorandum, if otherwise sufficient, will satisfy the statute and appellants do not contend otherwise. They do contend that a prior memorandum cannot suffice and, in support, cite the early case of White v. Watkins, 23 Mo. 423, and a number of cases from other states. Those cases do not decide the question. They hold that a writing which merely indicates an unfulfilled in-

tention or desire to enter into a contract at some time in the future is insufficient. Of course, if the minds of the contracting parties do not meet there is no contract, regardless of the Statute of Frauds.

On the other hand, it has often been held that a written offer, afterward verbally accepted, satisfies the statute. Such an offer must be made before, and sometimes is made long before, the contract is actually entered into. [Black & Snyder v. Crowther & Andrino, 74 Mo. App. 480, 1. c. 483; Carter v. Tie & Timber Co., 184 Mo. App. 523, 1. c. 529, 170 S. W. 445; Anderson v. Hall, 273 Mo. 307, 202 S. W. 539.] Appellants say that the memorandum in the instant case is not an offer to contract, but purports to be a completed contract. We do not think the form of the writing, that is, "I hereby sell" instead of "I hereby *offer* to sell", prevents it from being, in fact, an offer. But whether or not it be called an "offer", we see no reason why a prior memorandum, other requirements being met, should not suffice as well as a memorandum subsequently made. Respectable authorities sustain this view. [Williston on Contracts, Revised Edition, Vol. 2, Sec. 590; Page on Contracts, Vol. 2, Sec. 685.] The Restatement of the Law, Contracts, Vol. 1, Sec. 214, says: "A signed memorandum that correctly states the terms of a contract satisfies the statute, whether the memorandum is made before or at the time of the formation of the contract, or at any subsequent time during its existence". The same statement in almost the same words, is made by Mr. Williston in his work on contracts above cited. In the instant case the memorandum was signed by Barks on December 6th. At that time it denoted only a purpose or intention on his part to enter into an agreement. On December 19th, Barks disclosed to respondents that he had signed the memorandum, related its contents and asked their approval. Thus, although the memorandum was *made* before, it was *adopted* by the parties at the time the agreement was reached and that is enough unless some other reason prevents enforcement of the agreement.

██ Was delivery of the memorandum necessary? Appellants concede that it was unnecessary to make delivery to respondents, that delivery to a third person would be sufficient. So it has been decided. [Cash v. Clark, 61 Mo. App. 636; Crawford v. Dahlenburg, 221 Mo. App. 600, 283 S. W. 65; Moore v. Mountcastle, 61 Mo. 424.] But appellants say that since Barks retained control of the memorandum it does not meet the statutory requirements. Appellants also say, "we do not claim that there are any Missouri cases directly and squarely in point on this question", but claim that the opinions of our appellate courts show that delivery is one of the essential elements. On this point appellants cite the following Missouri cases: Sursa v. Cash, 171 Mo. App. 396, 156 S. W. 779; Poplin v. Brown, 200 Mo. App. 255, 205 S. W. 411; Hain v. Burton, 118 Mo. App. 577, 94 S. W. 589, and Logan v. Waddle, 315 Mo. 980, 287 S. W. 624. While loose expressions contained in some of those cases indicate that delivery is necessary, a

careful reading will disclose that the memoranda considered were defective for other reasons. Either they did not contain substantially all the terms of a contract or did not show that a contract was actually concluded, but only in contemplation.

In Anderson v. Hall, 273 Mo. 307, 202 S. W. 539, 1. c. 541, this court said: "There need be no controversy about the proposition that, if two persons meet and orally agree on the terms of the sale and purchase of real estate, and a memorandum of such an agreement is made and signed by one of those persons, such memorandum will bind the person so signing it, *even though it may remain in his possession*". (Italics supplied.)

In 27 C. J. 300, it is stated that there is a difference of opinion among the courts of the various states on this question. Appellants cite Brown v. Brown, 33 N. J. Eq. 650, and In re Brill's Estate, 197 N. W. 802 (Wis.), as holding that delivery of the memorandum is necessary.

We think that some of the decisions fail to recognize the purpose of the memorandum or to distinguish between the memorandum and the contract itself. Delivery of a deed is necessary to effect the transfer of the legal title to real estate, but there is no requirement in the statute that a memorandum, which merely serves as evidence of the contract, must be delivered. 25 R. C. L., page 676, section 313, says:

"The evil the statute seeks to guard against is the use of oral evidence to prove the contract. This is obviated by the production of the undelivered memorandum thereof. If produced from the defendant's own custody, it guards against the mischief that the statute was passed to prevent, just as well as if produced from the custody of the plaintiff. The plaintiff is the one likely to suffer by leaving the evidence of his bargain in the hands of the defendant—not the defendant himself. Again, where a written agreement to sell land was never delivered by the vendor the court, in holding a delivery unnecessary to satisfy the statute, placed its decision on the ground that the oral contract is merely unenforceable and that to render it enforceable it is only necessary that the terms of the contract be in writing and signed by the party to be charged."

In Lowther v. Potter, 197 Fed. 196, the distinction between the memorandum and the contract is pointed out and it is expressly held that the memorandum need not be delivered.

As stated before, if Mr. Barks had delivered the paper to his secretary without any directions appellants will concede that the statute would have been satisfied, but, since he retained some measure of control over the paper, appellants say it must fail as a memorandum. We do not think so. The validity of the paper, as evidence of a contract as distinguished from being the contract itself, depends not upon its delivery, but upon its being made public for the purpose of serving as a memorandum of the contract. We do not go so far as

to say that the memorandum would have been sufficient if Mr. Barks had merely signed and retained it without disclosing its contents. That is not this case. He signed the paper in the presence of witnesses, had them attest it with their signatures, later publicly disclosed the contents of the paper to respondents and he and they adopted it as evidence of their agreement. Thus, while he may not have relinquished entire physical control over the paper, he did put it beyond his power to prevent its use as evidence. Both the St. Louis and Kansas City courts of appeal have held that if the memorandum is lost its contents may be proved by parol and an action be maintained on the contract. [Davis v. Kroyden, 60 Mo. App. 441; Brinkman v. Luhrs, 60 Mo. App. 512.]

Appellants contend, and cite cases to show, that the memorandum is insufficient for failure to state the time and place for performance of the contract. They concede that, if no time and place had been agreed to, a reasonable time and the usual business place would be implied; but say that a definite time and place were agreed to, to wit, when Mr. Barks should return from his South American trip and arrive at Los Angeles. We agree with the statement of the law on this point as set out in the cases cited, but we do not agree that those cases are applicable to the facts of the instant case. Here, the evidence shows that Barks and respondents intended the agreement to be binding on all parties from and after December 19th, although the details were to be completed later when Barks returned from his trip. True, the evidence shows that they were to "finish up the note proposition" when Barks should get to Los Angeles on his return, but there was nothing said as to when or where the stock would be transferred and delivered. Nor was there any definite time when Barks would return from his trip. Suppose Barks had decided to delay his departure for South America, or to forego the trip altogether, or to return by another route than by Los Angeles, would not the law still hold him to a reasonable time and the usual place for performance of his contract? In the cases cited by appellants the omissions from the memorandum were definite matters, such as to deliver 800 cases of eggs within "two days", to deliver corn at a certain farm "in ten days or two weeks", to transfer and deliver shares of corporate stock "on July 6, 1920".

Appellants say that specific performance should be denied because there was no mutuality of obligation or remedy under the alleged contract.

There is some confusion in the decisions on this question. Some courts make a distinction between mutuality of *obligation* and mutuality of *remedy*, but the real difference in the decided cases is as to whether mutuality of remedy is essential to the validity of a contract and, if so, whether such mutuality must exist from the inception of the contract.

The Restatement of the Law, Contracts, Vol. 2, sec. 372, subsection (1) says:

"The fact that the remedy of specific enforcement is not available to one party is not a sufficient reason for refusing it to the other party".

In the pocket annotations to that volume it is stated that Missouri decisions are contra to the rule announced in the subsection above quoted and several Missouri decisions are cited. These decisions are not entirely in harmony with each other.

Glass v. Rowe, 103 Mo. 513, 15 S. W. 334, quotes from Waterman on Specific Performance that there must be mutuality both of obligation and remedy, but the real holding was that a contract made by defendant's agent, in excess of his authority which fact was known to the other contracting party, was not binding on defendant.

In Houtz v. Hellman, 228 Mo. 655, 128 S. W. 1001, the plaintiff's name was signed to a contract without his knowledge or authority. So there was, in fact, no contract entered into—no mutuality of obligation. It was held that plaintiff could not adopt and enforce the alleged contract, especially since, for other reasons, he did not come into a court of equity with clean hands.

In Falder v. Dreckshage (Mo. App.), 227 S. W. 929, specific performance was denied for lack of mutuality of remedy, but that case does not decide that mutuality as to remedy must exist from the inception of the contract. There the court said the contract was executory "and consisted of personal services to be performed by him (plaintiff) of such nature as to make it impossible for the defendants to have specifically enforced the contract against plaintiff." The actual ground of decision was that mutuality of remedy must exist at the time of suit.

Nokol Company v. Becker, 318 Mo. 292, 300 S. W. 1108, was an injunction suit. In the course of the opinion the court said that, to permit a contract to be specifically enforced there must be mutuality both as to obligation and remedy.

In McCall v. Atchley, 256 Mo. 39, 164 S. W. 593, the plaintiffs, who were attorneys, were denied specific performance of a contract for the conveyance of an interest in land in consideration for their services in recovering title and possession of the land. The decision rests in part upon the ambiguity of the contract, but the court also said the nature of the contract for personal and professional services of lawyers was such as to preclude specific enforcement against them, and there must be mutuality of remedy from the execution of the contract.

We believe that McCall v. Atchley is the only Missouri case cited in the annotations to the Restatement or cited by appellants, which states the rule as requiring mutuality of remedy from the inception of the contract. On the other hand there are numerous Missouri cases

in which contracts, lacking mutuality of remedy, at the inception, have been specifically enforced. Many of them are cases in which the contract has been fully performed by the plaintiff, or the plaintiff has done some act since the contract was made which renders it specifically enforceable against him. In Ivory v. Murphy, 36 Mo. 534, l. c. 542, it is said: "Where the party files a bill, he does an act that will bind him, and from that time there is mutuality; and the other party cannot plead the Statute of Frauds, because the words of that statute only prevent an action from being brought where the agreement is not signed by the party to be charged". To the same effect are Mastin v. Grimes, 88 Mo. 478; Smith v. Wilson, 160 Mo. 657, 61 S. W. 597, and Real Estate Co. v. Spelbrink, 211 Mo. 671, 111 S. W. 480.

In Jones v. Jones, 333 Mo. 478, 63 S. W. (2d) 146, a contract, fully performed on the part of the plaintiff by the rendition of professional services as an attorney, was specifically enforced. The opinion modifies the effect of the rulings in McCall v. Atchley, supra, and Houtz v. Hellman, supra, reviews other cases, discusses the distinction between mutuality of obligation and of remedy, and quotes with approval from 58 C. J. 868 as follows: "While there have been expressions and indications to the contrary, . . . the more generally accepted doctrine is that it is not essential that mutuality of remedy shall exist at the inception of the contract, nor need it have existed prior to the time of the decree. Accordingly, the requirement is satisfied if mutuality of remedy exists at the time the suit is filed." Also, from 65 A. L. R., page 49, "Even though there is a want of mutuality (of remedy) in the contract at the time it was entered into, this is not regarded as an insuperable barrier to a decree requiring the specific performance of the contract. If a party against whom it would not be practicable to decree the specific performance of a contract performs upon his part, or by other act renders himself subject to such relief, the original lack of mutuality will not preclude granting a decree of this character".

In the instant case Mr. Barks signed a written statement binding himself to deliver a certain number of shares of stock to respondents, in consideration of their promise to execute their notes to him in the amount and on the terms specified in the writing. Respondents orally agreed to the terms. This agreement was not illegal or void. The phrase in the statute "allowed to be good" only refers to the remedy and does not make the contract void. [Cash v. Clark, 61 Mo. App. 636 and cases cited.] Grant that the contract when made could not be specifically enforced against respondents because they had signed no writing in evidence of their agreement, yet it could not be presumed that they would interpose the statute to prevent enforcement against them. If sued, they could waive the statute, and would waive it if they failed to object to oral evidence of the

contract. Not only that, but at any time after the agreement was made the respondents could have supplied the lack of mutuality (of remedy) by merely signing and making available as evidence a paper correctly stating the terms of the contract.

"So when a written contract exists which binds one party any subsequent note in writing signed by the other is sufficient to bind him, provided it either contains in itself the terms of the contract or refers to a writing which contains them". [25 R. C. L., p. 640, sec. 268.]

If the statute can be satisfied by a signed statement *after* the contract, what becomes of the argument for necessity of mutuality at the inception? If respondents could supply the lack of mutuality (of remedy) by merely signing a paper a few minutes before filing suit, why could they not do so by the act of filing suit? That act is a waiver of the statute and. an offer to perform the contract, notwithstanding they had signed no memorandum. In other words, a contract was made; it was ▇▇▇▇ not invalid; by filing suit respondents have waived the statute and appellants cannot successfully plead it because the statute only requires the memorandum to be signed by the "party" (although the language used in the statute is "parties") to be charged. [Cunningham v. Williams, 43 Mo. App. 629; Beall et al. v. Miller, 207 Mo. App. 32, 230 S. W. 357; Ivory v. Murphy, 36 Mo. 534; Mastin v. Grimes, 88 Mo. 478.]

"It is now almost universally held that specific performance may be decreed against the party signing, though in a sense the contract lacks mutuality because it cannot be enforced against the other party if he should plead the defense of the statute, as the filing of the bill by the party not signing supplies the mutuality of remedy". [25 R. C. L., p. 672, sec. 308.]

▇▇ Appellants say that enforcement should be refused because the difference between the value of the stock and the price to be paid makes it inequitable; also, for the same reason, that the transaction was in fact a gift and not a sale.

To support this contention appellants cite cases in which specific enforcement was refused, such as Walker v. Bohannon, 243 Mo. 119, 147 S. W. 1024; Selle v. Selle, 337 Mo. 1234, 84 S. W. (2d) 877; Bick v. Mueller, 346 Mo. 746, 142 S. W. (2d) 1021; Sportsman v. Halstead, 347 Mo. 286, 147 S. W. (2d) 447; Niehaus v. Madden, 348 Mo. 770, 155 S. W. (2d) 141. Those were cases in which the contract was entirely oral and, while that fact does not change the legal principles involved, it does increase the quality of the proof required to establish the fact that a contract was made and its terms. Specific performance rests upon the sound discretion of the chancellor, to be judicially and not arbitrarily exercised. Here the contract is not entirely oral. Its terms are definitely and specifically set forth in a paper dictated and signed by Mr. Barks himself. There is not the slightest indication that the terms of the contract have been misrepresented or that it was

induced by fraud or undue influence. He was a shrewd, successful business man with pride in the business institution he had developed and confidence in his employees. In selling stock to respondents for less than its real value he was following a practice which he had started some time before, with the purpose, no doubt, of increasing the interest of his employees in his business. The chancellor expressly found that the contract was not inequitable and that it was a sale and not a gift. We cannot say that his discretion was unsoundly exercised.

█ Finally, appellants object to the tender made by respondents at the trial. Respondents tendered their notes for the amounts and on the terms set forth in the memorandum. Appellants' objections are that the notes are dated December 6, 1940, thirteen days before the contract, and made payable to the estate of Frank S. Barks, which estate was not in existence at the date of the notes. Both objections are without merit. The estate is not injured by the notes being predated as it thus gets more interest than it could rightfully claim; since Mr. Barks is dead the notes are properly payable to his estate.

We see no reason to disturb the findings of the chancellor and the decree in each case is affirmed. All concur.