253 S.W.2d 838 (1952)
SHORTRIDGE
v.
GHIO.
No. 21734.
Kansas City Court of Appeals. Missouri.
November 3, 1952.
*839 Frank W. Hayes, Sedalia, for appellant.
A. L. Shortridge, Joplin, for respondent.
BOUR, Commissioner.
Plaintiff-respondent brought this action in equity for specific performance of an alleged contract for the purchase of certain real estate in Sedalia, Missouri. The petition alleges plaintiff's ownership of the property in question; the signing of a written contract by defendant and by plaintiff's duly authorized agent, Donnohue Loan & Investment Company, on March 19, 1951, for the sale of said property by plaintiff and the purchase thereof by defendant, and alleges a payment of $200 by defendant to said agent as a deposit and as a part payment of the agreed purchase price, to be so applied when the deed should be executed and delivered. The petition further states that plaintiff has always been ready and willing to perform her part of the contract upon payment of the balance of the purchase price and to convey the property by good and proper warranty deed, and to deliver to defendant possession of the premises; that plaintiff's agent, on March 30, 1951, duly tendered to defendant such deed and an abstract showing good title; that defendant has refused to accept same and to pay the balance of the purchase price in the amount of $17,300; that plaintiff has no adequate remedy at law. The prayer asked for judgment and decree ordering defendant to accept the deed and to pay plaintiff $17,300, with interest from date of said tender until paid, and that such judgment be declared a lien on the real estate described, and for costs.
A copy of the real estate contract referred to in the petition was attached as an exhibit and reads as follows:
"Real Estate Contract
"This Contract, Made and entered into this 19th day of March 1951 by and between Mrs. Martha G. M. Shortridge, party of the first part, and John B. Ghio, party of the second part.
"Witnesseth, That the party of the first part agrees to sell and the party of the second part agrees to buy the following described real estate, situate in the County of Pettis State of Missouri, to-wit:
"Property known as and numbered 720 Broadway, Sedalia, Missouri, at and for the sum of Seventeen Thousand Five Hundred & No/100 Dollars to be paid as follows: Two Hundred And No/100 Dollars the receipt of which is hereby acknowledged, and the balance is to be paid as follows:
"Seventeen Thousand Three Hundred And No/100 Dollars on delivery of Warranty Deed and Merchantible Abstract of title.
"Donnohue Loan and Investment Company shall act as escrow agent for the mutual benefit of both parties hereto.
*840 "Party of the first part agrees to furnish an abstract from the Government, continued to date.
"It is hereby provided that upon completion of the terms as outlined herein, party of the first part will deliver or cause to be delivered to the party of the second part, his heirs or assigns, a good and sufficient Warranty Deed to the above described property.
"Possession on the signing of this contract.
"Taxes for 1950 and prior years to be paid by first party.
"If the party of the second part should fail to consummate this contract, the party of the first part may, at her option, declare this contract at an end, and retain the sum already paid as liquidated damages. But if the title to said property should, upon examination, prove not good, and cannot be made good, within a reasonable time, then the sum of Two Hundred Dollars shall be refunded to the party of the second part or his legal representatives and neither party will be liable to the other whatsoever.
"In Witness Whereof, This said parties hereto have signed in triplicate the day and year first above written.
 "S/s John B. Ghio (SEAL)
 "Donnohue Loan & Investment Co.
 Agent for Martha G. M. Shortridge
 By: S/s W. H. Bunn (SEAL)
 " V. Pres.
 "------(SEAL)
 --------(SEAL)"
Defendant, in his amended answer, denied plaintiff's ownership of the property in question for want of information respecting the title; admitted that on March 19, 1951, he signed "a form of purchase contract covering the premises" in Sedalia, and that he deposited with plaintiff's agent, Donnohue Loan & Investment Company, the sum of $200 to be applied on the purchase price specified in said form of contract if such contract became a binding and enforceable agreement through execution by plaintiff. Further answering, he alleged that the contract form signed by him was a mere offer to purchase the property on the terms therein specified, and that it was executed by him with the understanding that it would be submitted to plaintiff by her agent for her acceptance or rejection; that such offer as made contemplated that plaintiff, if she desired to accept, should do so by signing said instrument and by no other method; that before the contract form was executed by plaintiff or anyone in her behalf, defendant withdrew his offer by notifying plaintiff's said agent that the offer was withdrawn; that if said form of contract bore the signature of Donnohue Loan & Investment Company as agent for plaintiff, such signature was affixed after notice of such withdrawal and termination of the offer; and if affixed prior to such notification the same was done by said agent without authority of plaintiff and is not binding upon defendant under the Statute of Frauds, Section 432.010 RSMo 1949, V.A.M.S. Defendant denied every allegation in the petition not expressly admitted. The answer also contained a counterclaim for the $200 deposited with plaintiff's agent. Defendant alleged in his counterclaim that his said offer to purchase the property "contemplated acceptance through the execution of the contract embodying same by plaintiff or on her behalf by her duly authorized agent"; that "while the agreement embodying said offer" remained unaccepted, defendant withdrew his offer and demanded return of his deposit, for which he asked judgment.
The reply averred "that plaintiff by her duly authorized agent, Donnohue Loan and Investment Company, and defendant entered into a valid written contract for valuable consideration as alleged in plaintiff's petition," and denied "that defendant withdrew or had the legal right to withdraw from said completed contract."
Before trial the parties stipulated that, pending this action, the property in question might be sold by plaintiff for not less than $15,000 and in such event the suit should thereafter be one for a money judgment for the difference between the sale price and the price ($17,500) specified in the alleged contract. It was agreed that neither such stipulation nor any action of either party thereunder should otherwise affect or prejudice *841 the rights of the parties thereto, nor the status of the suit as one in equity. This stipulation was brought to the attention of the court at the close of the evidence, and it was further stipulated that plaintiff, acting under the pre-trial stipulation, had sold the property to third parties on June 15, 1951, and before trial, for $15,000.
The court found that under the preponderance of the evidence the contract was signed on plaintiff's behalf by the Donnohue Loan & Investment Company before that company had notice of defendant's refusal to proceed with the purchase of the property; that after such refusal plaintiff tendered a proper deed and abstract to defendant; and that an oral authorization of a broker to sell real estate, though void under the Statute of Frauds, may be ratified by the owner. The decree recited that the court found the issues in plaintiff's favor on her petition and her damages were assessed at $2300, the difference between the unpaid balance of the contract purchase price and the amount for which said property was sold under the pre-trial stipulation, with interest in the amount of $253.68. The court also found in plaintiff's favor on defendant's counterclaim. Defendant has appealed.
It is the duty of this court to review the case upon both the law and the evidence and reach its own conclusions. The judgment will not be set aside unless, it is clearly erroneous, and due regard will be given to the opportunity of the trial court to judge of the credibility of the witnesses. Section 510.310, RSMo 1949, V.A.M.S.
According to plaintiff's evidence the plaintiff, then residing in California, had listed for sale with the Donnohue Loan & Investment Company of Sedalia as agent, her residence property in that city at a price of $20,000. Among her letters to the agent nothing appears that authorized the agent to sign her name, or to sign its name in her behalf on any contract for a sale. Defendant appeared at the office of the above agency the morning of March 19, 1951, and inquired of its salesman, E. C. Martin, regarding the property in question. The salesman then took defendant through the house and thereafter defendant again appeared at the office on the same day and said: "Here is a check. Fill it out for $200 and make the contract." Accordingly the check was so made, executed, and delivered to the agent by defendant and the contract was typed in triplicate in words and figures as shown in the exhibit heretofore set out. The triplicate originals were then signed only by the defendant buyer and the three instruments were left in the possession of E. C. Martin. The salesman then telephoned plaintiff's son, an attorney at Joplin, Missouri, and told him of the transaction. The son stated he would call his mother in California, and on the next day, March 21, 1951, he called the salesman and reported his mother's acceptance. Thereupon the salesman prepared a deed for plaintiff's signature with the name of the grantee in blank, and mailed it to plaintiff in California. On March 21st or 22nd, the agent talked with defendant by telephone. He testified:
"Q. Did you have any telephone conversation with Mr. Ghio between the 19th and 23d? A. Yes, sir.
"Q. What was the nature of that? A. I told him the abstract was ready for the attorney's examination. * *
"Q. Did you advise Mr. Ghio of the approval of the sale? A. Yes.
"Q. By Mrs. Shortridge? A. Yes.* * *
"Q. Just state what it was. If you remember the details of the conversation you had with Mr. Ghio state it and if not, just tell the court in substance what it was? A. We called Mr. Ghio, it was a day or two before the 23d. It might have been the 22d, it could have been the 21st and told him the abstract was ready; that the contract had been approved and that we would take it or send it to his attorney if he would tell us who it was. He told us he would be over, but he was a day before he got there, then he got there on the 23d.
"Q. And what took place on the 23d? What did he have to say or what did you have to say to him when he first came into your office on the 23d of
*842 March? A. He told us to take the abstract to Martin & Gibson for their examination."
The salesman, E. C. Martin, further testified that on March 23d, the occasion of defendant's visit to his office above described, the original and two carbons of the contract were taken from the office vault and one copy handed to the defendant for examination; that in defendant's presence, the vice-president of the agency signed two of the instruments in its firm name as "Agent for Martha G. M. Shortridge, by W. H. Bunn, V. Pres." He testified further that Mr. Bunn asked the defendant for defendant's copy to be likewise signed, and that defendant stated it was not necessary, put his copy in his pocket and left the office. Mr. Bunn's testimony was substantially the same as to the signing of the two instruments by his firm.
According to the further testimony of E. C. Martin the defendant, at the time of his visit to the agency office on March 23, 1951, said nothing to indicate he desired to withdraw from the contract, and it was not until shortly after the agent that day delivered the abstract to the defendant's attorney under the instruction of defendant, that the attorney, on the same day, called at the agency office and said his client wished to withdraw. On the next day the attorney mailed the abstract back to the agent's office. In the meantime, according to plaintiff's evidence, the plaintiff had received the deed, executed it on March 24, 1951, and mailed it back to the agent who received it March 27, 1951, when it was tendered with the abstract to the defendant and refused by him. It was testified that defendant then said: "Now, when I made that offer for that house, I wanted it. In the meantime, I have changed my mind. I am not going to pay for it, unless they make me over at the court pay for it." He did not then ask for the refund of his deposit, but refused on demand to pay the balance of the purchase price, $17,300. By stipulation at the trial, it was agreed that plaintiff owned an unencumbered fee simple title to the property in question on the date of her deed and of its tender to defendant, subject to taxes for 1951.
The plaintiff, on the stand, verified the date of the call from her son on March 19, 1951, advising her of the contract offer and said she told her son she would accept, and instructed him to so notify the Donnohue Loan & Investment Company; that she received the deed on March 24, 1951, and executed it. She admitted that she had never signed any written contract, and that she had never given any written authority to her agent to sign in her behalf. She said that when she executed the deed, she had no notice of defendant's desire to withdraw his offer to buy the property.
Defendant testified that he contacted the agent, E. C. Martin, on March 19, 1951, regarding the property after seeing the "For Sale" sign; that after being told the price was $20,000, he asked to look at it; that after viewing the place that day he went back to the agent's office, stated that he would be interested in buying it for $17,500, and was told that his offer would be submitted; that the contract form was accordingly drawn up in triplicate and signed by him; that on March 23, 1951, he changed his mind and called at the agent's office to see if the contract had been signed; that the three instruments were produced and one was given him; that none had been signed by or on behalf of the plaintiff and none was signed in his presence; that he took his copy to his attorney, telling him he wished to withdraw from the transaction and requested his services in such withdrawal. On cross-examination he was asked by plaintiff's son, her attorney: "Q. Did Mr. Ernest Martin call you on or about the 20th or 21st of March and tell you that the contract was satisfactory to Mrs. Shortridge? * * * A. He said he had talked to Mrs. Shortridge's son. Q. That was me? A. Mrs. Shortridge's son said she would accept the offer."
John T. Martin, defendant's attorney, testified that immediately after he received the abstract from the agent the defendant came into his office, showed him his copy of the contract signed by him only, and told the witness that he did not want the property and desired to get out of the transaction, and that he had signed three copies of the contract; that none had been signed *843 by plaintiff, and that the other two were in the Donnohue office where he had just seen them; that defendant told him he had not notified anyone connected with the Donnohue office that he wished to withdraw; that witness, at defendant's request, then went to the Donnohue office and was told by E. C. Martin that the other two copies of the contract were in the safe and had not been signed by Mrs. Shortridge, but that a deed for the property had been mailed to her for execution and was expected back in a few days; that the witness told E. C. Martin that defendant was no longer interested and did not want the property; that E. C. Martin said Mrs. Shortridge's son had told the agents to sign the contract, but they decided they did not have the authority to do so.
Defendant-appellant contends that the written instrument signed by him was a mere offer in writing to purchase real estate on terms therein prescribed, which by its form called for acceptance by the actual execution thereof by plaintiff; that defendant's signature alone was not sufficient; that plaintiff's verbal acceptance created no contract; that under such circumstances the defendant had a right to withdraw his offer and effectually did so; that it was error, in view of the greater weight of the evidence, for the court to find that the agent signed the contract for plaintiff prior to notice of defendant's withdrawal; that there was no evidence of any authority given to the agent to sign for plaintiff and such authority, if given, would have to be in writing, of which there was no proof. Defendant again asserts his right to recover on his counterclaim.
Plaintiff-respondent contends that the written instrument signed by defendant, the party to be charged, when accepted, was sufficient to satisfy the Statute of Frauds; that there was a verbal acceptance of the written contract signed by defendant; that defendant was notified of such acceptance before he gave notice of withdrawal; and that such acceptance completed the contract. Plaintiff also states in her brief that "it was immaterial as to whether or not this contract was ever signed by plaintiff or anyone in her behalf because a verbal acceptance of defendant's contract or offer was sufficient and this being true, it logically and reasonably follows that the form of authorization, be it verbal or written, given by plaintiff to her agent is immaterial." While the memorandum opinion of the trial court contains a statement to the effect that an oral authorization of a broker to sell real estate, though void under the Statute of Frauds, may be ratified by the owner, it will be noticed that plaintiff does not contend that she ratified the action of her agent in signing two copies of the written instrument, and there was no evidence of ratication.
The Statute of Frauds, Section 432.010 RSMo 1949, V.A.M.S., provides in part that "No action shall be brought to charge * * * any person upon any agreement * * * made for the sale of lands, * * unless the agreement upon which the action shall be brought, or some memorandum or note thereof, shall be in writing and signed by the party to be charged therewith, or some other person by him thereto lawfully authorized, and no contract for the sale of lands made by an agent shall be binding upon the principal, unless such agent is authorized in writing to make said contract."
We agree with plaintiff that so far as the Statute of Frauds is concerned a written agreement for the sale of land need not be signed by both parties but only by "the party to be charged therewith, or some other person by him thereto lawfully authorized"; that the words "party to be charged", as used in the statute, mean "the party sought to be charged" in the action; and that in the instant case the party sought to be charged is the defendant who admits that he signed the written instrument here in evidence. Thrower v. Keltner, 358 Mo. 152, 231 S.W.2d 476; Mastin v. Grimes, 88 Mo. 478; Carter v. Western Tie & Timber Co., 184 Mo.App. 523, 170 S.W. 445; Black & Snyder v. Crowther & Andriano, 74 Mo. App. 480. See also Kludt v. Connett, 350 Mo. 793, 168 S.W.2d 1068, 145 A.L.R. 1014. It does not follow, however, that defendant's written offer to purchase plaintiff's real estate could be accepted verbally. It is clear that the instrument signed by defendant in triplicate on March 19, 1951, and *844 sometimes referred to as "the contract," was nothing more than an offer by defendant to purchase plaintiff's real estate upon the terms therein specified. Groh v. Calloway, 316 Mo. 989, 292 S.W. 65; Cohen v. New England Mutual Life Ins. Co., 7 Cir., 140 F.2d 1; Champion v. Hammer, 178 Or. 595, 169 P.2d 119. It is equally clear that no contract came into existence unless plaintiff took some action which would constitute a valid acceptance of the offer and before defendant gave notice to the Donnohue agency that he was withdrawing his offer.
In Groh v. Calloway, 316 Mo. 989, 993, 292 S.W. 65, 66, the court said: "No doubt obtains as to the rule that, whenever the party to be charged voluntarily signs a written memorandum of an agreement relating to the sale of land, containing all the constituent elements necessary to satisfy * * * the statute of frauds, the courts will, provided the facts otherwise accord with equitable principles, specifically enforce the agreement to which the memorandum relates. The above rule, however, comprehends a valid agreement, with regard to which the minds of the parties thereto have actually met, for it is a memorandum of an agreement, not of a nonagreement." (Italics ours.) And in Kludt v. Connett, supra, 168 S.W.2d loc. cit. 1070, it was said: "Of course, if the minds of the contracting parties do not meet there is no contract, regardless of the Statute of Frauds."
As indicated above, plaintiff stands on the proposition that her oral acceptance of defendant's written offer, of which defendant had notice before he gave notice of his withdrawal of such offer, completed the contract. Plaintiff relies upon the following cases: Kludt v. Connett, supra; Anderson v. Hall, 273 Mo. 307, 202 S.W. 539; Carter v. Western Tie & Timber Co., supra; Black & Snyder v. Crowther & Andriano, supra. In the Kludt case the seller signed a written memorandum in regard to the sale of corporate stock. Thereafter he disclosed the contents of the memorandum to the buyers, and he and the buyers adopted the memorandum as evidence of their agreement, but the buyers did not sign the memorandum. A decree for specific performance of the agreement in favor of the buyers was affirmed on appeal. The court said 168 S.W.2d loc. cit. 1070: "* * * it has often been held that a written offer, afterward verbally accepted, satisfies the statute [of Frauds]." The facts in the Anderson case bear no resemblance to those in the case at bar. It was held in the Carter case that a written memorandum signed by defendant, which was in effect an order for certain timbers of specified dimensions, even if regarded only as an offer to receive and pay for the timbers, was accepted by a performance under the offer before it was withdrawn, no formal acceptance being required and no limitation of time fixed. The court said, 184 Mo.App. loc. cit. 530, 170 S.W. loc. cit. 447: "The acceptance of a contract covered by the statute of frauds may be oral, and the proof of such acceptance may be oral. * * * Nor was this such an offer to buy timber from plaintiff as required any formal acceptance. This is a case where the offeree was required to do something rather than promise something, and the doing the thing required is a sufficient acceptance." (Italics ours.) In the Black & Snyder case, the defendants made an offer in writing to purchase certain real estate from plaintiffs; the writing was signed by defendants and verbally accepted by plaintiffs. The court said 74 Mo. App. loc. cit. 483: "If the written proposal contains sufficient memoranda to otherwise meet the requirements of the statute, the acceptance may be oral."
While the opinions in the cases cited by plaintiff contain broad language which might be construed as meaning that any written offer may be accepted verbally unless the writing expressly requires some other mode of acceptance, we are convinced that the courts did not intend to announce such a rule. The statements quoted above must be read in the light of the facts in the particular case. In none of the cases cited by plaintiff was the writing signed by the offeror in the form of a contract like the one before us. In two cases the writing was in the form of a memorandum, and in two cases it was in the form of a letter. There was nothing on the face of any of those writings to indicate that acceptance *845 by signing was a condition of the offer. In the Carter case the court pointed out that the written offer did not require any formal acceptance because it required the offeree to do something rather than promise something. For reasons which appear below, these cases are clearly distinguishable from the one at bar.
"Acceptance of an offer is an expression of assent to the terms thereof made by the offeree in a manner requested or authorized by the offeror." Restatement, Contracts, Vol. 1, sec. 52, p. 58. Sec. 61 of the same Restatement reads: "If an offer prescribes the place, time or manner of acceptance its terms in this respect must be complied with in order to create a contract. If an offer merely suggests a permitted place, time or manner of acceptance, another method of acceptance is not precluded." In Hunt v. Jeffries, 236 Mo.App. 476, 484, 156 S.W.2d 23, 27, the court said: "The general rule * * * is stated in Lawson on Contracts, 3d Ed., Section 23, page 38, as follows: `The offerer has the right to prescribe the time, place, form or other condition of acceptance, in which case the offer can be accepted only in the way prescribed by the offer.'" See Williston on Contracts, Rev. Ed., Vol. 1, sec. 76, p. 218. The text in 17 C.J.S., Contracts, § 42, p. 381, reads in part as follows: "An offer in writing need not be assented to by signing the offer, but may be accepted orally, unless the offer requires its acceptance to be in writing, in which case it must be thus accepted and a verbal acceptance is insufficient unless it is assented to by the offerer * * *."
As shown by the exhibit heretofore set out, the writing involved in the instant case was in the form of a bilateral contract. It was typed in triplicate and the triplicate originals were signed by defendant. It was headed "Real Estate Contract" and contained various provisions commonly found in such contracts. One provision, however, was rather unusual. It reads: "Possession on the signing of this contract." (Italics ours.) The last paragraph reads: "In Witness Whereof, This (sic) parties hereto have signed in triplicate the day and year first above written." At the end of the proposed agreement were two lines for the signatures of the parties.
As we have said, the proposed contract was merely an offer to purchase plaintiff's real estate upon the terms therein specified, one term being that he should be given possession of the property "on the signing of this contract." The defendant acquired no right to possession by signing the offer and submitting it to plaintiff's agent, for as stated above no contract could come into existence unless and until the plaintiff took some action which would constitute a valid acceptance of defendant's offer before it was withdrawn. It is obvious, therefore, that the words "on the signing of this contract," as used in the above provision, cannot be construed to mean "on the signing of this contract by the party of the second party," the defendant herein. The words can only mean "on the signing of this contract by the parties hereto." In view of the form of defendant's written offer and the provision in regard to possession, we think it clearly appears from the face of the instrument that acceptance by plaintiff was to be manifested only by signing the same. Admittedly, plaintiff did not sign the proposed agreement; and there was no evidence that she ever authorized anyone else to do so on her behalf. It follows from what we have said that no contract came into existence unless plaintiff's verbal acceptance was assented to by defendant before he withdrew his offer.
According to the evidence, the deposit was made and the proposed agreement signed in triplicate by defendant on March 19, 1951. Defendant left the three instruments in the possession of plaintiff's agent, which tends to support his contention that he did not intend to be bound on the contract unless and until the instruments were signed by plaintiff. The salesman, E. C. Martin, testified that on March 21st or 22d, he notified defendant that the contract "had been approved" and asked directions as to delivery of the abstract for examination. On March 23d, defendant went to the office of the Donnohue agency. E. C. Martin testified that when defendant "first came" into the office, he "told us to take the abstract to Martin & Gibson for examination." *846 Such conduct on the part of defendant was not inconsistent with his contention that he did not intend to be bound unless the proposed agreement was signed by plaintiff. At that time he had no reason to suspect that the instruments had not been signed by plaintiff or by an agent lawfully authorized to do so, for he had been notified by plaintiff's agent that the contract "had been approved." It was not until the three instruments were taken out of the vault that defendant learned they had not been signed by plaintiff or her agent. At his request one of the triplicate originals was handed to him for examination.
The testimony was conflicting as to whether W. H. Bunn, an officer of the Donnohue agency, signed two of the instruments on behalf of plaintiff while defendant was in the Donnohue office on March 23d. As stated, plaintiff says it makes no difference whether "the contract was ever signed by plaintiff or anyone in her behalf." She relies upon her verbal acceptance of defendant's offer. Plaintiff's testimony tended to show that W. H. Bunn offered to sign the instrument which had been handed to defendant, but defendant said it was unnecessary. Defendant left the Donnohue office and shortly thereafter went to the office of his attorney. In the meantime, the Donnohue agency delivered the abstract to defendant's attorney. The attorney testified that immediately after he received the abstract the defendant came into his office, showed him the instrument which defendant had retained and told him he wanted to withdraw his offer to purchase plaintiff's property. At the request of defendant, and about thirty or forty minutes after he received the abstract, the attorney went to the office of the Donnohue agency and notified E. C. Martin that defendant was withdrawing his offer. The abstract was returned to the Donnohue agency the following day.
If defendant made a statement to the effect that it was unnecessary for the Donnohue agency to execute the instrument which had been handed to him, we do not believe such statement was inconsistent with his contention that he did not intend to be bound unless the proposed agreement was signed by plaintiff. The statement, if made, was rather ambiguous. It was not a decisive act showing an intention to assent to plaintiff's verbal acceptance of his offer. Furthermore, he did not know at the time whether the Donnohue agency had been lawfully authorized to execute the proposed agreement on plaintiff's behalf. In fact, there was no evidence that plaintiff ever authorized the Donnohue agency to sign the writing on her behalf. We find no evidence in the record from which it can be reasonably inferred that defendant assented to plaintiff's verbal acceptance of his offer.
It follows from what we have said that no contract came into existence before defendant withdrew his offer, and plaintiff was not entitled to recover in this action. Under the facts in this case, defendant was entitled to recover on his counterclaim for $200. Sooy v. Winter, 188 Mo.App. 150, 175 S.W. 132. The judgment should be reversed and the cause remanded with directions to enter judgment for defendant and against plaintiff on her petition, and to enter judgment for defendant on his counterclaim. The Commissioner so recommends.
SPERRY, C., concurs.
PER CURIAM.
The foregoing opinion of BOUR, C., is adopted as the opinion of the court. The judgment is reversed and the cause remanded with directions to enter judgment for defendant and against plaintiff on her petition, and to enter judgment for defendant on his counterclaim.
All concur.