CATHERINE GROH ET AL., Appellants, v. CHAUNCEY CALLOWAY ET AL. —292 S. W. 65.

Division Two, March 14, 1927.

**1. CONTRACT: Written Memorandum: Specific Enforcement.** Whenever the party to be charged voluntarily signs a written memorandum of an agreement relating to the sale of land, containing all the elements necessary to satisfy the statute (Sec. 2169, R. S. 1919, commonly known as the fourth section of the Statute of Frauds), the courts will, if otherwise according with equitable principles, specifically enforce the agreement to which the memorandum relates. But the memorandum must relate to a valid agreement, one with regard to which the minds of the parties have actually met; and unless there has been such an actual agreement, there can be no specific enforcement.

**2. ———: Signed by One Party After Death of Other: Acceptance: Enforcement.** A contract for the sale of real estate, signed by the buyer a week before his death and by the seller two weeks after the buyer's death, cannot be specifically enforced in a suit by the buyer's widow, heirs and administrator, where the minds of the buyer and seller never met, and the evidence shows an acceptance by the seller of the terms of the contract, not before, but only after, the buyer's death.

**3. ———: ———: No Acceptance: Revocation: Binding on Neither.** The death of either buyer or seller before the other accepts, or communicates his acceptance of the terms set forth in the written instrument for the sale of land, revokes the offer contained therein. Until the minds of the parties meet there is no agreement, and they cannot meet until the offer of the one is accepted by the other, and the death of the one before acceptance by the other immediately revokes the offer, and neither the estate of the deceased offerer, nor the offeree, is bound by the unaccepted offer.

**4. No Acceptance: Revocation: Binding on Neither: Relating Back.**   The signing of a contract by the seller after the death of the buyer did not relate back to its execution by the buyer, where there had been no acceptance by the seller prior to the buyer's death.   The offer of the buyer having been revoked by his death, the seller could not enter into a contract with a dead man.

---

Corpus Juris-Cyc. References: **Frauds, Statute of,** 27 C. J., Section 305, p. 256, n. 98.   **Vendor and Purchaser,** 39 Cyc., p. 1189, n. 68; p. 1195, n. 90.

Appeal from Jackson Circuit Court.—*Hon. O. A. Lucas,* Judge.

AFFIRMED.

*George W. Day* for appellants.

(1)   The contract declared upon in the amended petition, and given in evidence, is susceptible of specific enforcement, because it is signed by the defendant, the party to be charged therewith, and, by this action, the plaintiffs accept it and tender performance on their part.   Sec. 2169, R. S. 1919; Ivory v. Murphy, 36 Mo. 534; Luckett v. Williamson, 37 Mo. 388; Mastin v. Grimes, 88 Mo. 478; Warren v. Costello, 109 Mo. 338; Smith v. Wilson, 160 Mo. 657; Aiple-Hemmelman Co. v. Spellbrink, 211 Mo. 692.   (2)   If defendant had never signed the contract, it could have been specifically enforced against the estate of Stephen Groh at the suit of said Calloway, because Groh, before his decease, had signed it and thereby bound himself and his heirs.   Ivory v. Murphy, 36 Mo. 542.   (3)   The death of Stephen Groh, before defendant Calloway had signed the contract, did not sever their contractual relations.   The contract had theretofore orally been made.   It was put into writing merely to satisfy the statute.   When that was done and the writing signed by Groh, he became bound and the contract became mutual, provided Calloway accepted it, either by a suit to enforce it or by signing it. The latter Calloway did after Groh's death, and Groh, being already bound, conditioned upon Calloway's acceptance, the contract  became enforceable by either plaintiffs or Calloway the instant the latter signed it.   The statute requires only written evidence of the contract, signed by the party to be charged, and it is immaterial when such evidence came into existence, provided it exists and is produced at the trial.   Cash v. Clark, 61 Mo. App. 640; Fitzpatrick v. Flannagan, 106 U. S. 648.   (4)   Even if the negotiations between Groh and defendant Calloway never reached the stage of a contract, the heirs of Groh, plaintiffs herein, after his decease and at the time the contract was signed by Calloway, adopted their ancestor's obligations, **as** prescribed by that contract, and became entitled to performance

by Calloway.  Bernor v. Bagnell, 20 Mo. App. 543; Stone v. Pennock, 31 Mo. App. 544; American Pub. Co. v. Walker, 87 Mo. App. 503; State v. Regent Laundry Co., 196 Mo. App. 627; Muehlbach v. Mo. Pac. R. R. Co., 166 Mo. App. 305; 13 C. J. p. 306, sec. 128.

*E. F. Halstead* and *Swearingen & Finnell* for respondents.

(1) Stephen Groh, having signed the proposed contract, and then dying before such proposed contract was accepted, signed or delivered by defendant Calloway, no contractual relation ever existed between Groh and Calloway.  13 C. J. 298.  (2) The court will not enforce an oral contract to convey real estate unless the proof of the contract pleaded be such as to leave no reasonable doubt in the mind of the chancellor.  That the contract, as alleged, was in fact made and the testimony of plaintiff and his attorney, denied by defendant, was not such as to warrant the court in finding that any oral contract was ever made by plaintiffs and defendant, Collins v. Harrel, 219 Mo. 279; Russell v. Sharp, 192 Mo. 270.

DAVIS, C.—The widow, heirs and administrator of Stephen Groh filed this suit for specific performance, based on a land purchase contract signed by Stephen Groh and wife on November 22, 1922. Stephen Groh died November 30, 1922.  The contract was thereafter signed, on December 12, 1922, by defendant Chauncey Calloway, hereinafter called defendant or Calloway, subsequent to the death of Stephen Groh.  The plaintiffs, in said petition, pray the court to compel Calloway, the fee owner, to convey to them Lot 401 of Prospect Vista, an addition in and to Kansas City in Jackson County. The court entered judgment finding the issues in favor of defendants, and adjudged that plaintiffs take nothing and their petition be dismissed.  Plaintiffs duly appealed from the judgment.

Plaintiffs rest their right of recovery solidly on the foundation, as alleged in the petition, that Stephen Groh and Calloway on November 22, 1922, entered into a contract whereby said Calloway sold and agreed to convey to Stephen Groh Lot 401 described above.  We need not here notice the petition further than to say that it is based, as to its terms, on the written draft of the contract hereinafter noted, although it refers to a certain deed of trust executed by defendant Calloway and wife to Fidelity National Bank & Trust Company as trustee for the note-holder, the Prudential Insurance Company of America, and a warranty deed to one Kennedy, which we think unnecessary to refer to further.

From the facts developed at the trial and pertinent to the issue here discussed, we find that on or about November 10, 1922, Calloway was the owner of Lot 401 described above and was at that time building

a dwelling thereon; that Calloway and plaintiff Edward J. Groh, here-inafter called Edward, son of Stephen Groh, on or about November 10, 1922, met and began negotiations looking toward the sale of Lot 401 to Stephen Groh, who was at that time confined by illness to his bed.   Thereafter Edward, acting for Stephen Groh, continued nego-tiations with Calloway, their negotiations reaching a point where each decided to see an attorney, Edward going to defendant Day for advice, and Calloway to defendant Wilkinson.   Wilkinson drafted a contract which was submitted to Edward, who objected thereto. The contract was then re-drafted.   Edward took the contract as re-drafted to his father and mother, each of whom signed same on No-vember 22, 1922.   On November 23rd or 24th he delivered the draft of the contract to Calloway, the pertinent portions of which are as follows:

"This contract, made and entered into this 22nd day of November, 1922, by and between C. Calloway, the seller, and Stephen Groh, the buyer,

"Witnesseth:   That seller has sold and agrees to convey as herein provided the following described real estate in Kansas City, in Jack-son County, Missouri, to-wit:   All of Lot Four Hundred and One (401) of Prospect Vista, an Addition in and to Kansas City, Mis-souri, as shown on the recorded plat thereof, same being a lot im-proved with a dwelling house now being finished by seller and which said dwelling house seller agrees to complete, finish and deliver to buyer concurrently with the delivery of deeds herein provided for— for the price and sum of fifty-five hundred ($5500.00) dollars, to be paid by the buyer as follows:   Two hundred and fifty ($250.00) dollars at the signing of this contract, the receipt whereof is hereby acknowledged by the seller and which is deposited with W. F. Wil-kinson, Kansas City, Mo., together with a copy of this contract, as part of the consideration of the sale, the balance whereof is to be paid in the following manner, to-wit:   $2750.00 cash on delivery of deed as herein provided and twenty-five hundred ($2500.00) dollars to be paid by the conveyance to seller of Lots 348, 291, 290 and 233 of said Prospect Vista, free and clear of all liens and encumbrances ex-cept only assessments for paving and curbing.

"The seller to pay in full all state, county and municipal taxes, general and special, and all assessments, which are a lien on said property, that can be paid at the date of this contract, but none other."

Subsequently Stephen Groh and his wife executed a warranty deed to lots 348, 291, 290 and 233 of Prospect Vista, placing same in the hands of Day, with instructions to deliver the deed to Calloway upon the fulfillment of the contract.   On November 30, 1922, Stephen Groh died intestate, Edward becoming his administrator.   Calloway

did not sign the contract until December 12, 1922, nearly two weeks after the death of Stephen Groh. About six days after the father's death Edward saw Calloway, who wanted to know whether they could continue the deal, Edward replying that he would find out and see what could be done about it. Thereafter Edward and his attorney met Calloway and attorney, at which time it was decided to go through with the deal, Calloway then signing the contract. The sum of $250, to comply with the terms of the contract, was deposited with Wilkinson and a receipt was given by Wilkinson to the effect that it was deposited on the purchase price of Lot 401, Prospect Vista, dated December 13, 1922. Such other facts as are pertinent to the issues involved will appear later.

I. In arguing error, plaintiffs take the position, first, that the contract, declared upon in the amended petition and accepted in evidence, is susceptible of specific enforcement because it is signed by Calloway, the party to be charged, and that by this suit the plaintiffs accept it and tender performance on their part; second, that even though defendant Calloway had never signed the contract it could have been specifically enforced against the estate of Stephen Groh in a suit by Calloway, because Groh before his death signed it, thereby binding himself and his heirs; third, that the verbal contract, written merely to satisfy the Statute of Frauds, did not, upon the death of Groh before the signature of Calloway was appended, sever their contractual relations, because the signing bound Groh and mutuality existed provided Calloway accepted it by signing or suing to enforce it; that when Calloway signed it, the contract then became enforcible by either plaintiffs or Calloway, because the Statute of Frauds requires only written evidence of the contract signed by the party to be charged; fourth, that even though negotiations between Calloway and Groh never culminated in the contract, yet the heirs of Groh, plaintiffs herein, after his death, upon Calloway signing the contract, adopted Groh's obligations prescribed by the contract and became entitled to have it specifically enforced; fifth, that the contract provides that the seller has sold and agrees to convey as herein provided, showing that the minds of the parties clearly met on the terms of the contract.

No doubt obtains as to the rule that whenever the party to be charged voluntarily signs a written memorandum of an agreement relating to the sale of land, containing all the constituent elements necessary to satisfy Section 2169, Revised Statutes 1919, commonly known as the fourth section of the Statute of Frauds, the courts will, provided the facts otherwise accord with equitable principles, specifically enforce the agreement to which the memorandum relates. The above rule, however, comprehends a valid agreement, with regard to

316 Mo.—63.

which the minds of the parties thereto have actually met, for it. is a memorandum of an agreement, not of a non-agreement.

In the instant case, the evidence shows that the minds of Stephen Groh and Calloway failed to meet with respect to the terms of the contract. The situation presented demonstrates that they failed or refused to come to a common understanding. They were merely negotiating. As a part of their negotiations they went to their attorneys to have their negotiations drafted in writing, which was done. That they were merely negotiating, even though their negotiations were reduced to writing, is shown and emphasized by the objections made to the first draft of the contract by Edward Groh. It is also in evidence that Calloway, uncertain as to the amount of the curb and paving taxes, desired to ascertain the amount as well as to consult his attorney before signing the contract. Notwithstanding Stephen Groh and his wife signed the contract and that it was presented to Calloway for his signature and perusal, the evidence goes no further than showing that negotiations were being continued. To the time of Stephen Groh's death, the evidence denies an agreement on the part of Calloway. This was the situation at the death of Stephen Groh. The signing of the contract by Stephen Groh and wife constituted nothing more than an offer to Calloway to become consummated and enforcible by his acceptance. It is elementary law that the death of Stephen Groh, before Calloway accepted or communicated acceptance, revoked the offer. The rule is stated in 13 Corpus Juris, page 298, reading: "The death or insanity of either party before acceptance is communicated causes an offer to lapse. An acceptance communicated to the representatives of the offerer cannot bind them, nor can the representatives of a deceased offeree accept the offer on behalf of his estate." The situation then presented is an offer on the part of Stephen Groh, the non-acceptance by Calloway to the time of Groh's death, and his death on November 30th. The death caused the offer to become withdrawn and incapable of being accepted by Calloway or by the heirs of Stephen Groh.

It is contended by plaintiffs, however, that when Calloway signed the contract after the death of Stephen Groh, this was an acceptance because the other party was bound, the contract being capable of being enforced against the estate of Groh. This would follow if the evidence demonstrated that Calloway had accepted the contract before Groh's death. But the evidence not only does not so show, but on the other hand demonstrates that the draft of the contract signed by Groh and wife was never more than an offer which became revoked on Groh's death, and therefore incapable of acceptance by either Calloway or Groh's heirs. The contract having lapsed on the death of Groh, because not accepted, neither the estate of Groh nor Calloway became bound and neither could enforce it against the

other, for the minds of Stephen Groh and Calloway never met. Under the circumstances, the heirs of Groh could not adopt their father's obligations, for he was not bound at the time of his death, to an obligation by virtue of the writing.

It is further contended by plaintiffs, however, that the signing of the contract by Calloway after the death of Groh related back to the execution of it by Groh, the contract then becoming enforcible by either plaintiffs or Calloway. The contract could only in the first instance have been entered into by Groh, and as the offer was revoked by his death, it is plain that Calloway could not enter into a contract with a dead man.

In view of the foregoing, the judgment is affirmed. *Higbee, C.,* concurs.

PER CURIAM:—The foregoing opinion by DAVIS, C., is adopted as the opinion of the court. All of the judges concur.