Van R. HAHN, d/b/a Tornado Fencing & Supply Company (Plaintiff), Respondent,

v.

FOREST HILLS CONSTRUCTION COMPANY, a Corporation (Defendant), Appellant.

No. 30433.

St. Louis Court of Appeals.

Missouri.

April 19, 1960.

Motion for Rehearing or to Transfer to Supreme Court Denied May 16, 1960.

Schurr and Inman, St. Louis, for appellant.

George D. Pittman, Jr., St. Louis, for respondent.

WOLFE, Presiding Judge.

This is an action for damages arising out of an alleged breach of contract. The suit was brought against both the Forest Hills Construction Company and R. M. Keeney, Jr., but the court directed a verdict in favor of R. M. Keeney. There was a verdict and judgment in favor of the plaintiff against defendant Forest Hills Construction Company in the sum of $2,184, and the defendant corporation has appealed.

The petition of the plaintiff alleged that the defendant had agreed in writing to employ the plaintiff to supply and erect a chain link fence in a subdivision known as Flordel, in St. Louis County. It was alleged that the fence was to be 9,400 feet long and that the defendant agreed to pay a total sum of $11,092 for the fence. It was further alleged that the plaintiff constructed 1,500 feet of the fence and that the defendant thereafter refused to permit him to continue with the construction, although he was ready, able, and willing to do so. The defendant's answer merely denied the allegations in relation to the contract.

The facts of the case as presented by the evidence revealed that the plaintiff, Van R. Hahn, was in the business of erecting fences. He had in his employ in April of 1957 two salesmen, Glen Hays and his brother Charles Hays. These two salesmen learned that R. M. Keeney was in charge of constructing a subdivision known as Flordel, in the City of Florissant, St. Louis County. There were ditches in the subdivision and the Hays brothers called on Mr. Keeney to find out if he intended to fence off the ditches. Keeney said that it was to be done and that he had received a bid for the work at a price of $1.21 per lineal foot. Glen Hays then asked Mr. Keeney if he would be interested in receiving a bid from the plaintiff, and Keeney said that he would. Keeney then told the salesmen that a Mr. Vatterott was developing some land adjoining his and that they were going together on some of the fencing necessary. He stated that he would need 9,400 feet of fencing. With this information the salesmen then returned to their place of employment and discussed the matter with Mr. Hahn. They were authorized to make a bid of $1.18 per foot. They then went back to Mr. Keeney and quoted him the price of $1.18 per foot, and according to Glen Hays: "He said that if we could give him the fence for $1.18 per foot it was lower than the other bids he had and it was all right with him."

Mr. Glen Hays a short time later again called on Mr. Keeney and presented him with an order form drawn up and setting out the type of fence and that it was to be 9,400 feet long. The order form also contained the following:

"This Fence to be erected by Tornado Fence Co. for the Forrest Construction Co. in Florland Subdivision. The material will be furnished and erected at the rate of $1.18 per foot. This rate for complete job of 9,400 feet, and same rate shall be granted for any additional footage. Erection to begin at time specified by Forrest Construction Co. weather permitting.

"40 percent of total cost to be paid on date job begins. Balance to be paid on completion of entire job."

This was signed for the defendant by R. M. Keeney as president and by Glen Hays as representative of the Tornado Fencing & Supply Company, which was the name under which Hahn did business.

Hahn testified that about a month after the written agreement was signed, he received a telephone call from Mr. Keeney advising him that he was ready for the fencing. On May 23, 1957, Hahn started the construction of the fence and erected approximately 1,600 feet of it. He was obliged to stop construction then because the rest of the ground was not yet graded for fencing. Thereafter Hahn called Keeney from time to time, and each time that he phoned he was informed that no more ground was ready. In November, Hahn went out to the subdivision and found that the rest of the proposed fencing had been erected by a company named All-American Fencing Company. Hahn said that Keeney informed him that he got the fence from this company at a cheaper price.

The fence that Hahn actually installed was paid for, and this suit is for the profit Hahn would have made upon the construction of the remaining footage. He testified as to the cost of material and labor connected with the erection of a fence of the length specified. No question is raised as to the amount of the judgment, so it is unnecessary to set out such evidence.

The defendant filed a motion for a directed verdict at the close of the plaintiff's case. The court overruled the motion and the defendant offered no evidence but stood upon the motion.

█ Appellant asserts that the court erred in overruling his motion for a directed verdict at the close of the plaintiff's case. It is asserted that there was no contract in that the instrument offered in evidence "lacked the essential elements of a contract". Under this general assignment it is claimed that a contract must be construed against the party who prepared it.

This rule might be applicable if we were dealing with an ambiguous contract calling for construction, but we will not resort to the construction of a contract when, as here, the intent of the parties is expressed in clear, unambiguous language. In such an event there is nothing to construe. All we do is give effect to the clear meaning of the contract. Mickelberry's Food Products Co. v. Haeussermann, Mo.Sup., 247 S.W. 2d 731.

█ The contract before us was a written memorandum of an agreement reached when the plaintiff offered to fence 9,400 feet of ditches in the Flordel Subdivision at a price of $1.18 per foot, and the defendant accepted the offer. It is contended that the evidence conclusively shows that Mr. Keeney merely acknowledged receipt of the contract when he signed it. There is nothing about the signature that would so indicate, and the defendant relies on this contention upon the cross-examination of witness Glen Hays. The questions and answers in respect to it are as follows:

"Q. Then when you went back after this meeting with Mr. Hahn, your employer, you went back to see Mr. Keeney with Plaintiff's Exhibit A, you gave him one, he asked you for another for Mr. Vatterott, and you gave him that, and then you asked him to sign it, did you not—acknowledge receipt of it, is that right?

"A. Right.

"Q. And he did? A. He signed it."

█ It seems from the foregoing that the witness was merely stating that the contract was signed, and no reason is advanced as to why the receipt of it should have been acknowledged by signature. Although the evidence supports the signing of the contract, whether or not it was signed is of no importance for, although a written contract is not signed by one or both of the parties, the acceptance by one of the performance by the other gives va-

**386**

lidity to the instrument and imposes on the acceptor the obligations provided by the contract. National Surety Co. v. Equitable Surety Co., Mo.App., 242 S.W. 109. A contract may be orally accepted, and there is adequate evidence that it was. Shortridge v. Ghio, Mo.App., 253 S.W.2d 838.

 The defendant also complains of the main verdict directing instruction given at the request of the plaintiff. It is asserted that the instruction is not supported by the evidence, and that it "lectures the jury".

The instruction required the jury to find that the plaintiff made a proposal in writing to erect the fence "for the sum and price of $11,092.00". It is contended that this part of the instruction is not supported by the evidence because the defendant did not by the instrument sued upon obligate himself to pay $11,092. It is true that the contract is for 9,400 feet of fencing at $1.18 per foot, but since the cost of 9,400 feet at $1.18 per foot equals $11,092, we cannot see how the defendant is in any way prejudiced by the instruction stating the total sum.

The instruction further required the jury to find that the offer was accepted, and it is contended that this is unsupported by evidence. This point is likewise without merit and has been fully covered by what we have said under the first point raised.

 After requiring a finding that the contract was entered into and the plaintiff erected 1,600 feet of the fence, the instruction continues by stating:

"If you further find and believe from the evidence that Defendant thereafter refused to permit Plaintiff to erect any more such fence and if you find and believe from the evidence Plaintiff performed his part of said contract up to said time and was then in the performance of said contract, and was ready, willing and able to continue the performance of the same, then you are instructed that the De-

fendant had no right to rescind such contract, or prevent the Plaintiff from performing his part thereof; * * *"

The defendant takes out of context and complains about the words, "then you are instructed that the Defendant had no right to rescind the contract, or prevent the Plaintiff from performing his part thereof." We are cited to no authorities relating to any point raised in relation to the instruction, but the defendant states that the excerpt last quoted "lectures the jury about the Defendant". Perhaps it does. All instructions to some extent lecture the jury in the sense that a lecture is a methodical discourse intended for instruction. They must of course be confined to the law as it is to be applied to the facts. From the words used we find no departure from the facts sufficiently serious to prejudice the defendant, and hold that the point is without merit.

The judgment of the Circuit Court is affirmed.

ANDERSON and RUDDY, JJ., concur.