**R. W. FARMER CONSTRUCTION COMPANY, a Corporation, Appellant,**

v.

**George L. CARTER et al., Respondents.**

**No. 54233.**

Supreme Court of Missouri, Division No. 2.

April 13, 1970.

Motion for Rehearing or to Transfer to Court En Banc Denied May 11, 1970.

Jack B. Robertson, Rogers, Field, Gentry, Benjamin & Robertson, Kansas City, for appellant.

Alan F. Wherritt, Wherritt & Turpin, Liberty, for respondents.

BARRETT, Commissioner.

This cause originated as a suit by a general contractor, R. W. Farmer Construction Company, (in fact Mr. R. W. Farmer) to recover damages for breach of a building contract, particularly for extra materials and work, and to establish a mechanic's lien, against the owners, Frank B. Miller and George L. Carter, of the shopping center west of Liberty, known as the Liberty Landing Center. Originally Farmer sought to recover the total sum of $41,089.78 but, admittedly, Miller (throughout representing all defendants) was entitled to a credit of $2941.47 and in the end the court allowed Farmer $5595.27 and thus upon his appeal the jurisdictional amount involved is his claim of the total difference in demands—$32,553.04, the latter consisting of numerous items. As against Farmer's claims for extras and for damages for breach of contract the defendant-respondents, personified in Miller, filed a counterclaim for damages, for unworkmanlike job, for failure to furnish pursuant to contract numerous items, 24 in number, liquidated damages and other claims, all said to total $43,748.86. Unlike one or more of the cases relied on by the appellant, the parties here waived a jury and at appellant's special instance and request the Honorable Arthur W. Rogers, the circuit court judge of Carroll and Ray Counties, rather than one of the judges of Clay County, was agreed upon as a special judge to hear this cause. After a hearing involving, accounting for and questioning every step in the performance of the contract and very nearly every piece of work and material entering into a shopping-center complex allegedly costing $267,728.-49, the court, as stated, entered judgment in favor of the contractor for $5595.27, adding, due to an after-trial motion, $741.37 interest, and he alone has appealed. Whatever the original totals, the appellant-contractor admits that the defendant-owners paid $226,638.71 and thus on these computations he claimed additional damages and charges for extras totaling $41,089.78.

The first item challenged in detail, one readily separable from all other items, is the court's allowance to respondents on their counterclaim of liquidated

damages at $130.00 per day for the period of April 1, 1966 (the specified date of completion) to May 1, 1966, of $3900.00. The appellant makes five attacks on this allowance, that under the terms of the contract the authority to invoke liquidated damages was in the architect only, that the provision was waived, that defendants failed to prove actual damages as a result of delayed completion, that there was no proof that liquidated damages were proportionate to the actual damages sustained and, finally, that he completed construction within the allotted time and therefore liquidated damages could not be assessed.

This five-part argument ignores the plain and unambiguous language of the contract as well as the court's specific findings. Unlike the case relied on, Southwest Engineering Co. v. Reorganized School Dist. R–9, Mo.App., 434 S.W.2d 743, it is not claimed that the delay was due to the architect and the contract provision here was not dependent on invocation by the architect. Incidentally that case and Franken v. Carpenter, Mo.App., 364 S.W.2d 15, also relied on by the appellant, control and govern adversely virtually every claim made by the appellant. The contract here, in the plainest of language, after providing a completion date "within 180 days from date of signing of contract" provides that "In addition to the above sum specified, *the owner will be entitled to $130.00 liquidated damages for every day's delay beyond the time set for completion.* Such sums to be deducted from any monies which may be due the Contractor on the contract." (Emphasis supplied.) This is a valid provision, "(t)he language employed is aptly chosen to exclude the idea of a mere penalty," the damages resulting, as in the case of a courthouse, are by no means easy of ascertainment by fixed rules and "(h)aving regard to all these matters this plaintiff voluntarily made a fair contract with defendant putting their own estimate on the damages. Let him keep his word by standing by his contract." Thompson v. St. Charles County, *227* Mo. 220, 240–241, 126 S.W. 1044;

Manufacturers Casualty Ins. Co. v. Sho-Me Power Corp., D.C., 157 F.Supp. 681, (there $100.00 a day liquidated damages for delay in constructing a power line). The court's finding on this issue was not in the cryptic language of appellant's briefed item 41 summarizing and listing the court's findings. The court carefully analyzed this issue, and it may be noted, after deciding all other issues, this matter was decided in conclusion. The court corrected an erroneous impression (one easily fallen into on this record) as to the date of signing to October 2, 1965, and concluded as the Thompson case indicates "that the terms of the contract must be enforced." The defendants claimed a much larger sum by showing the specific dates beyond the stipulated 180 days their tenants were able to occupy the various sections of the shopping center but the court did not accept this proof in its entirety. Instead the court found, as indicated by its prior findings, that "plaintiff had not fully complied with his contract to that date (April 1, 1966) and that *in facts the plans have never been completely carried out*; that there is ample credible evidence that defendants had not accepted sole possession until May 1, 1966, and that *the delay was due to lack of full performance on the part of plaintiff*; that the time of completion to that point was only because defendants took it upon themselves to complete work undone by plaintiff." (Emphasis supplied.) The court therefore credited the respondents with $3900.00 damages for 30 days' delay. In the Southwest Engineering case the contractor claimed and was denied 15 days' liquidated damages for delay, but upon the cause and responsibility for delay and applicable here the court said "the evidence on this question was conflicting and close, and the trial court's decision depended upon conflicting oral testimony and the credibility of witnesses. We cannot say that we are satisfied its finding should have been otherwise, and therefore we defer to its judgment." (434 S.W.2d 1. c. 748.) The provision here was unambiguous and so there is no place for the auxiliary rule that

the contract is to be construed against the party drafting it. Hahn v. Forest Hills Const. Co., Mo.App., 334 S.W.2d 383. The structure may have been, as appellant argues, "substantially complete" on April 1, 1966, but whatever "substantial" may mean this particular contractual provision, as the court applied it, plainly said as to liquidated damages, "Such sums to be deducted from any monies which may be due the Contractor on the contract." Southwest Engineering Co. v. Reorganized Sch. Dist. R–9, supra. The finding is supported as will more certainly appear in considering appellant's other claims, there was proof and offer of proof of actual damage, and there was no manifest error in the allowance of $3900.-00 liquidated damages. Thompson v. St. Charles County, supra; Annotation 34 A. L.R. 1336, 1341, 1350; 13 Am.Jur.2d (Building, Etc., Contracts), Sec. 86, p. 87.

■ The appellant has specified nine other major points and the court is challenged "to review the entire record upon both the law and the evidence and to reach its own conclusions as to the facts, giving due deference to the findings of the trial court." The challenge is in substantially the language of the rule except that there are notable omissions: *"The judgment shall not be set aside unless clearly erroneous,* and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Civil Rule 73.01(d), V.A.M.R. Or as the court said of substantial performance in the Southwest Engineering case "but on conflicting evidence, the question whether the building was substantially complete on that date was one of fact for the trial court, 13 Am.Jur.2d, Building & Construction Contracts, § 129, p. 120, and we cannot say that its finding in this respect was clearly erroneous." Nevertheless, the court has attempted to meet the appellant's challenge, every page of the crowded two-volume record and the forty-two accompanying exhibits have been considered all with the appellant's points in mind. It is not proposed, however, to encumber this opinion and

the judicial archives with a detailed consideration of every point and item raised by the appellant. The mere statement in appellant's brief approaches 14,000 words, items of $63.00, $52.27, $293.63, $145.00, $220.00 and $391.00, all far less than the cost of this transcript, $839.70, are vigorously challenged. Regardless of amount involved, appeals in this jurisdiction are a matter of right, "Any party to a suit aggrieved by any judgment" may appeal (RS Mo 1959, § 512.020, V.A.M.S.) and this is not to disparage the right. It is to say, however, that in a maze of detailed claims out of a project of this magnitude, it is sufficient to demonstrate from selected illustrations that the appellate function of review has been duly performed.

■ In this particular case the trial judge's finding of fact is detailed and exhaustive, thirty-nine pages, and every claim, large or small, is thoroughly examined. At this point it should be pointed out that all issues were not found for the respondents, many items were found against them and in favor of the contractor. For example $1047.10 was involved in a subcontractor's bill for asphalt, the parties disagreed as to the yardage and the price. The court carefully considered the testimony of plaintiff and that of defendants' witness Kaplan (he and his professional estimates are vigorously challenged because unit prices were not used) and finally pointed out that the "difference is $207.00." The court observed that "it is difficult for the Court to determine which of the figures on yardage is correct" and examining the evidence carefully he concluded "that there may have been a misunderstanding as to this work" and finally found a credit to the contractor of $1040.00 as "a reasonable charge." As to an item of $250.00 for 300 pounds of shingles which the owners claimed to be too expensive the court said, "Nowhere in the transcript can the Court find that defendants have met this charge" and so the issue was decided in favor of the contractor. Some items are disallowed upon a finding, directly or indirectly, of

credibility. As to a claim for extra carpentry the court said that it was "difficult to follow the testimony and harmonize" this with storerooms and tenants, he observed that the appellant's supporting exhibit included "social security taxes, workmen's compensation allowance, liability insurance, etc." At one point in his findings the judge indicated the basis for some of his general theory; "it is the opinion of the Court that in instances where plaintiff fails in proof of performance and defendants prove entitlement to credit for failure to perform according to contract, the Court should allow credit to defendants." And then the court proceeded to illustrate upon the defendants' claim of plaintiff's failure to "install entrance ceiling framing, covering and base shoe" which plaintiff Farmer fixed at $166.50 and defendants' witness Kaplan at the sum allowed $293.63. One other illustration, there was considerable testimony about this item, the defendants claimed credit for $1248.57 for temporary utility services furnished at plaintiff's request to the end that concrete work could be carried on in cold weather: Throughout the trial and now appellant challenges this item "because there was no evidence that plaintiff had agreed to accept responsibility for payment of the bill, and because there was no evidence that construction was delayed after the utility service was provided." The court properly allowed this item because, regardless of evidence or responsibility, the general contract plainly provided in section 35(A) that "The *temporary* electricity, water, *heat* and telephone service necessary for the building construction shall be provided and paid by Contractor." In the Southwest Engineering case the contractee school district was "entitled to * * * $132.20 for water furnished the plaintiff while the building was being constructed."

At least four of the appellant's points are related and dependent and the appropriateness of their disallowance may be demonstrated rather briefly. There is a claim, appellant calls it one "of the hotly contested issues," for $3,096.25 for 2477 yards of dirt *"required to be brought in to the job because of a change in the bench mark and an error in the survey,"* says appellant. The court allowed plaintiff contractor $4500.00 for extra concrete—60 cubic yards at $75.00 a yard. The appellant claims, however, that before arriving at the amount due 74 yards of deleted concrete should have been included in the computation and thereafter eliminated at $60.00 a yard and then subtracted from the total thus entitling plaintiff to a credit of $5610.00 rather than $4500.00, a difference of $1110.00. Under a section of the building a basement was deleted after it had been excavated at least in part and for this the court allowed defendants a credit of $1460.00. The appellant says that this phase of the work, even though the basement was deleted, had been completed and therefore the court erroneously allowed respondents a credit. And finally in this connection the appellant complains of the disallowance of $2370.00 for extra excavation of dirt allegedly required because the size and depth of the footings were changed.

As indicated, it is not necessary to examine these claims in the bewildering detail urged by appellant. In large measure these particular claims hinge on the fact that the defendants' engineer erroneously gave the "bench mark" on this project as 841.32 when it should have been 840.32. The plaintiff's superintendent, after getting the missing "corner pins" located, started cleaning and grading and immediately "could see something bad was the matter." The bench mark was corrected (there are many pages of conflicting testimony as to the force and effect of the corrected bench mark) and so the plaintiff claimed that due to this correction the architect "raised that building up a foot." The defendants' witnesses, architect and engineer, testified that while the foundation was raised a foot that the elevations of the floors were level and not changed and that all elevations of the finished building are "in agreement with the plans." This phase of the controversy, rather interesting in itself, could be pursued at

length and the conflicting opinions and testimony examined in depth but it is not necessary to a disposition of the appeal. In resolving several of the issues the court considered the "bench mark" as well as the relocation of property lines and at one point found in weighing certain matters that "Mr. Farmer was not misled by this mistake in the bench mark. * * * Therefore, since the building was constructed according to and at the levels shown on the plans, Mr. Farmer was not misled." This finding was in connection with appellant's claim for 40,000 cubic feet of dirt, "an additional 2477 yards of dirt required to be brought in to the job because of a change in the bench mark," and the court observed "A great deal of time of trial of the issues centered upon this question of whether the change in the bench mark number resulted in a change in plan of elevation of the building. The Court has concluded that it did not and this conclusion was based primarily on evidence adduced by plaintiff" which the court proceeded to examine and weigh. This finding of the court is also supported by the defendants' evidence on this phase of the cause.

As to the claim for extra concrete, involving as indicated plaintiff's claim for an additional $1100.00, the court made these findings, all reasonably supported inferences: "The Court has given much attention to and has studied Plaintiff's Exhibit 14 (another controversial exhibit the counterpart of Mr. Kaplan's Exhibit N) as same relates to concrete construction and has studied the plans and specifications. The Court finds that the evidence supports plaintiff's claim that the original plans required 930 cubic yards of concrete in place, that through changes in plans, 74 cubic yards were eliminated (an error is readily seen in plaintiff's credits, in red figures top page 4, Exhibit 14). The Court finds that plaintiff furnished and placed 134 cubic yards of concrete through change orders and not shown on original plans. Thus the difference in 74 yards deleted from original concrete and 134 yards added and not in original contract is a difference of 60 cubic yards, for which plaintiff should be paid." The court then considered defendants' objection to price and concluded as to this item, and it couldn't be better put, "But the Court is of the opinion that a fair construction of the contract required the Court to deal in total amounts, deletions against extras in reaching the proper result."

And one final illustration: In addition to the claim for extra fill dirt claimed to have been hauled in (an item denied in toto by respondents) there was a claim for extra excavation of 550 yards, $2370.00, in connection with the foundation walls due to the change in size and depth of footings. As to this item the court considered the oral evidence, the respective exhibits and finally the contract and as to extra dirt excavation concluded: "The Court is of the opinion that unit price for neat excavation is not listed here because the unit price for reinforced concrete in place *includes the excavation necessary to put the concrete in place*," (emphasis supplied) and, therefore, of course disallowed the embraced claim.

In summary this is sufficient to indicate, reviewing the record upon the law and the evidence, that this court could not make other or different findings of fact or conclusions of law than those so painstakingly made by the trial judge and therefore his final summary and judgment, including the allowance of interest are affirmed.

STOCKARD, C., concurs.

PRITCHARD, C., not sitting.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.