R. E. SANDERS, Plaintiff-Respondent,

v.

Mary Mildred DeWITT, Individually and as Executor of the Estate of J. Roger DeWitt, Deceased, Defendant-Appellant,

and

Kaybee Construction Co., Inc., Defendant.

No. 29882.

Missouri Court of Appeals, Western District.

Feb. 26, 1979.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 3, 1979.

Rufus Burrus, W. Raleigh Gough, Independence, for defendant-appellant.

Carl E. Laurent, Independence, for plaintiff-respondent.

Before HIGGINS, Special Judge, Presiding, PRITCHARD, J., and WELBORN, Special Judge.

ANDREW JACKSON HIGGINS, Special Judge, Presiding.

Appeal by landowner from judgment for subcontractor against general contractor in sum $15,347.50 plus interest for reasonable

value of labor and materials charged as a lien against her real estate. The questions are whether there was a written contract which precluded recovery in quantum meruit; whether a mechanic's lien was precluded for failure to file a just and true account and properly describe the land to be charged; and whether the court failed to give credit for part payment. Affirmed.

The lien as filed August 1, 1975, described the property as Lots 52 and 53 Vaile Park, Independence, Missouri, owned by defendant, and detailed an account of labor and materials furnished to such realty on various dates from October 1, 1974, to April 4, 1975, a total of 1184½ hours at $15, $17,-767.50, to which was added $580 in rental and materials, and from which was subtracted a $3,000 payment November 12, 1974, with resultant balance claimed of $15,347.50.

Defendant Kaybee defaulted. Defendant DeWitt admitted ownership of the described property and demand for and refusal of payment, and otherwise denied plaintiff's petition to enforce the lien.

R. E. Sanders, a painting contractor, dealt with Kaybee Construction Co., Inc., through its officer, Wally Kurok, with respect to preparation work and painting of the Vaile Mansion, 1500 North Liberty, Independence, Missouri, sometime prior to October 1, 1974. He was asked to bid on preparation of the exterior wood and application of two coats of primer and one coat of finish. He examined the building and found it to be "a castle type brick and wood house * * * 80 feet high * * * very ornate * * * a lot of mill work on it and the back tower * * * comparable to four of five stories." He prepared a bid of $7500 for "prep work" and $8130 for painting, which he gave to Mr. Kurok for the general contractor. Mr. Kurok returned the bid, "the first one I made out," and stated "there was wording in there about the removal of the paint * * * Mr. Burrus[1] didn't like and reworded this and took it back to him, the second one." The first bid called for removal of paint "by

means necessary"; the second "by sanding and scraping." The second bid was never returned to him. He signed it but never received a copy. After presentation of the second bid he met with Mr. Burrus, II, "and we discussed the price on it and was agreeable and there was some discussion as to how long it would take to clean an area where it could be a smooth, paintable area and they agreed to pay me the rate of $15 an hour to run a sample there for a day or two so we could get a pretty good idea how long it would take to clean it. We never did then, so I just gave them a price of the prep work and the painting, labor and material." He was told by Mr. Kurok "to go to work," and he did so October 1, 1974. He worked along with his employees "before the job was stopped."

The house had not been painted for 25 years. "We bought vertical air grinders and sanding blocks and anything we needed, air hose to go on top and ground off all the paint that was rough, handsanded an awful lot of it * * * on the windows we had rotary electric sanding apparatus to get the sash around there * * * we used every other means except burning."

He paid his employees each week. He kept track of hours and materials on a "pad" in his truck and transferred them to a record he kept at home. "That way there wasn't any guessing about it." He showed 1184½ hours charged at $15 per hour, $17,-767.50, and sanding discs, paint and compressor rental, $580, a total of $18,347.50. He also showed a credit of $3,000, November 12, 1974, and a balance due of $15,-347.50. Mr. Kurok supervised the job generally and he made the $3,000 payment in November, 1974. Mr. Sanders's charge of $15 per hour was "a little under most of the bigger shops," and, in his opinion, all his charges were fair and reasonable for the labor and services performed.

"Our agreement was orally, they were to pay me the first of every month, not to exceed my labor costs, and I received the [$3,000] and that was it." Mr. Sanders quit

---

1. Rufus Burrus, II, son of counsel for defendant, a realtor in Independence.

the job April 4, 1975, because he had not received any additional payments. At that time there was work yet to do, but Mr. Kurok, when asked for payment, said he "wasn't going to pay anymore, that's all." Mr. Sanders did his work in reliance on mechanic's lien rights; that Mrs. DeWitt would pay.

In evidence at the instance of defendant were Exhibits 1, 2 and 2a, 5, 6 and 8.

Exhibit 1, written by Mr. Sanders, 10–7–74, reads:

This agreement is between Kaybee Cons't Company and R. E. Sanders Painters. To wit:

R. E. Sanders Painters agree to remove old, loose and rough paint from house located at 1500 North Liberty Street, Indep., Mo., to a firm paintable base that is smooth.

All the above mentioned work shall be done to exterior trim of aforementioned house.

The cost of aforementioned work shall be ($7500.00) Seventy Five Hundred Dollars, payable to R. E. Sanders in monthly payments not to exceed actual labor costs.

Exhibits 2 and 2a, written by Mr. Sanders, 11–26–74, read:

This agreement is between Kaybee Cons't Co. and R. E. Sanders.

R. E. Sanders agrees to paint all exterior wood trim and metal gutters on house located at 1500 North Liberty Street in Independence, Mo., with three coats of Pittsburg Paint. * * *

All work shall be done in a good substantial and workmanlike manner.

Kaybee Cons't Co. agrees to pay to R. E. Sanders the sum of Seven Thousand Ten Dollars ($7010.00) in payment as follows;

Payments not to exceed cost of hourly wages shall be paid to R. E. Sanders upon request.

Upon completion of painting, balance of agreement becomes due.

Exhibit 5, written by Mr. Sanders, 11–7–74, reads:

Request for partial payment on contract for removing paint from wood trim on building at 1500 No. Liberty, Indep. Mo.

| Contract | $7500.00 |
| Request | 3000.00 |
| Balance | $4500.00 |

Exhibit 5 is accompanied by a receipt and release in acknowledgment of payment of $3,000.

Exhibit 6 was a submission to Kaybee by Mr. Sanders for "Labor for removing old paint from brick on building at 1500 No. Liberty St., Indep. Mo. * * * 82 hours at $15.00 * * * $1230.00." Exhibit 6 bore a legend, "Received check # 6185 5/5/75 R. E. Sanders," and had an attached receipt and release in the same amount for "Cleaning brick only."

Exhibit 8 is a survey of Lots 52 and 53 Vaile Park, Independence, Missouri, showing that the Vaile Mansion lies wholly within Lot 53.

Rufus Burrus, II, secured completion of painting left undone when Mr. Sanders quit and paid Universal Construction Company $11,000.

Pertinent findings and conclusions follow:

The defendant Kaybee Construction Co., Inc., * * * had an agreement with Mary Mildred DeWitt to repair and remove and renovate building and improvements located at 1500 N. Liberty, Independence, Missouri.

Defendant Kaybee Construction Co., Inc., requested plaintiff to prepare the wood surfaces and paint them in the improvement known as the Vaile Mansion. * * *

The reasonable value of the work services and materials furnished by plaintiff to defendant, Kaybee Construction Co., Inc., is $15,347.50.

The labor performed and materials furnished were on and went into the improvements located at 1500 North Liberty, Independence, Missouri, legally described as Lot 53, Vaile Park, a subdivision in Independence, Jackson County, Missouri.

Plaintiff shall have a default judgment against defendant Kaybee Construction Co., Inc., for $15,347.50, plus interest in the sum of $1,764.88, for a total of $17,-112.38.

Plaintiff is entitled to a mechanic's lien against the said property in the said amount.

Judgment was for plaintiff against defendant Kaybee for $15,347.50 with interest from May 1, 1975, and it was charged as a lien against "Lot 53 Vaile Park, a subdivision in Independence, Jackson County, Missouri."

Such findings and judgment are to be sustained unless there is no substantial evidence to support them, unless they are against the weight of the evidence, or unless they erroneously declare or apply the law. Rule 73.01, as construed, *Murphy v. Carron*, 536 S.W.2d 30, 32[1–3] (Mo. banc 1976).

Appellant contends (I) that Exhibit 1 was a valid written contract for preparation of surfaces for an agreed price of $7,500, and Exhibits 2 and 2a were a valid written contract for painting for an agreed price of $7,010, and plaintiff could not disregard such contracts and sue in quantum meruit; and (II) that he could not disregard their terms but could recover only the contract price less the value of work not performed at the time he quit work.

Appellant's position depends on the presence of a binding express fixed price contract as she describes to the exclusion of any other agreement between the parties.

■ It is true, as argued by appellant, that signature is not always essential to binding force of an agreement. See, e. g., *Mabry v. Swift & Co.*, 145 S.W.2d 163 (Mo.App.1940); *Shortridge v. Ghio*, 253 S.W.2d 838 (Mo.App.1952); *Groh v. Calloway*, 316 Mo. 989, 292 S.W. 65 (1927); *Hahn v. Forest Hills Construction Co.*, 334 S.W.2d 383 (Mo. App.1960). Whether an unsigned writing constitutes a binding contract usually depends on the intention of the parties. The object of a signature is to show mutuality or assent which may be shown in other ways as, for example, by acts or conduct of the parties. 17 C.J.S., Contracts § 62, cited, *Mabry v. Swift & Co.*, supra, 145 S.W.2d 1. c. 166. In this connection, a bid is no more than an offer to contract. *A.A.B. Electric, Inc. v. Stevenson Public Sch. Dist. No. 303*, 5 Wash.App. 887, 491 P.2d 684, 686 (1971).

■ The state of the evidence and appellant's difficulty in making a binding contract out of unsigned Exhibits 1, 2, and 2a are aptly demonstrated by her recognition of "some disagreement and some confusion in the minds of witnesses as to some of the details of the negotiations" between the parties, and her concession "there was confusion as to whether the original contract was changed" at the request of Mr. Burrus, II.

Such conflicts in the evidence raised fact questions for the court which were resolved against a binding fixed or limited price contract in favor of payment of the reasonable value of services rendered, and the evidence does not dictate a contrary result.

■ Appellant contends (III) that plaintiff is not entitled to a mechanic's lien because he failed to file a just and true account of his claim as required by Section 429.080, RSMo. 1969.

It has been determined under Points I and II that the court's resolution of issues in favor of plaintiff's claim of $15,347.50 was supported by evidence. The lien statement was for the same amount, and was thus a just and true account which fairly apprised the property owner and the public of the nature and amount of demand asserted as a lien as required by the statute. *Hanenkamp v. Hagedorn*, 110 S.W.2d 826, 829 (Mo.App.1937). See also *Mississippi Woodworking Co. v. Maher*, 273 S.W.2d 753, 755 (Mo.App.1954).

■ Appellant contends (IV) that plaintiff should be denied a lien because his statement sought a lien against both Lots 52 and 53, when he knew or should have known no part of the improvements were situate on Lot 52.

Public records would not ordinarily reveal whether the Vaile Mansion improvement was on one or the other or both of Lots 52 and 53. The survey in evidence clarified the matter and the court limited the lien to Lot 53 consistent with the applicable rule that if more land is described than is necessary the lienable part will be charged and judgment given accordingly. *Kirkwood Mfg. & Supply Co. v. Sunkel*, 148 Mo.App. 136, 128 S.W. 258 (1910); *Oster v. Rabeneau*, 46 Mo. 595 (1870).

Appellant contends (V) that the judgment is inconsistent with the finding that reasonable value was $15,347.50, and the court rendered judgment for that amount without allowance of the $3,000 payment admittedly received by plaintiff.

The judgment was consistent with plaintiff's evidence and lien account, both of which showed credit of the $3,000 payment.

Judgment affirmed.

All concur.