CAL CAULFIELD AND COMPANY, INC., Appellant,

v.

The CITY OF BELTON, Missouri, Respondent.

No. WD35005.

Missouri Court of Appeals, Western District.

Dec. 26, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 5, 1985.

Howard E. Bodney, Steven C. Willman, Sullivan, Bodney & Hammond, Overland Park, Kan., Kevin M. McCormick, Kansas City, for appellant.

Michael Joy, Raymore, for respondent.

Before KENNEDY, P.J., and DIXON and CLARK, JJ.

DIXON, Judge.

Plaintiff Caulfield, an investment banking firm, appeals the entry of a directed verdict for the City of Belton (City) at the close of its evidence in a contract action. It asserts the court erred in directing a verdict for the City because the contractual terms were ambiguous, thus leaving a question of fact for the jury's determination.

In December, 1979, Perry, Adams & Lewis Securities, Inc., a financial advisor, offered its services to the City to manage a bond election. The proposal begins by stating, "By this proposal we offer our professional services and our facilities as Financial Advisors...." In nine numbered paragraphs, it then sets forth Perry's detailed obligations. By contrast, in those paragraphs the City's sole stated obligation is to pay the clerks' and judges' fees incurred in the election. The proposal goes on to state:

> As consideration for the services rendered by us and as reimbursement for the expenses which we are to incur, it is understood and agreed that your municipality is to pay and we are to accept a cash fee of 1% of the par value of the amount of bonds *voted and issued.* Such fee shall become due and payable simultaneously with delivery of the bonds to the purchaser....

> It is understood and agreed there is to be no cost to the City of Belton, Missouri, for any report, analysis or work that we may do in connection with this project or expenses that we might have incurred if the election or elections should fail to carry.

In April, 1980, Perry filed a Chapter 11 petition in bankruptcy and its proposal to the City was assigned to Caulfield. Led by the efforts of Jay Dillingham, Caulfield's employee, Caulfield complied with all of the requirements of paragraphs 1–9. A special bond election was held in October, 1980, but the issue failed. In February, 1981, the City's attorney informed Caulfield that other firms were being invited to submit proposals for the next election and Caulfield was encouraged to do so as well. Caulfield later submitted a new proposal to the City, designating a fee of 0.006% of the issued bonds' par value. The City turned down Caulfield's proposal and accepted that of another firm.[1] A successful bond election was conducted. Caulfield brought suit for a 1% fee of the $3.6 million bond issue. The court directed a verdict for the City at the close of Caulfield's case.

The document relied upon by Caulfield as a contract is in reality an offer to contract, which required, for acceptance, the City's undertaking to conduct an election. Neither expressly nor by necessary implication was the City bound to conduct an election. The City could not conduct such an election

1. The dissent says that the second election was an acceptance. This ignores the obvious rejection of the offer by the City and the counter offer by the plaintiff, which, likewise, destroyed the continuing offer.

except by the action of its governing body and that did not occur until after the execution of the document.

When a contract is formed by offer and acceptance, "[t]here must be actual acceptance." *Doran, Inc. v. James A. Green, Jr. & Co.*, 654 S.W.2d 106, 109 (Mo.App.1983), citing *Tanenbaum Textile Co. v. Schlanger*, 287 N.Y. 400, 40 N.E.2d 225, 226–27, 28 N.Y.S.2d 729, 730–31 (1942). Likewise, if the offer prescribes the mode of acceptance, that limitation will be honored. *Shortridge v. Ghio*, 253 S.W.2d 838, 845 (Mo.App.1952). The 1979 proposal assigned to Caulfield is clearly an offer to act as advisor for a contemplated, but not yet ordered, bond election. It was, in essence, a bid, "an offer to contract." *Sanders v. DeWitt*, 579 S.W.2d 707, 711 (Mo.App. 1979). The document's introductory language, "By this proposal we offer ... our services ...," supplemented by the enumeration of the facets of the offer in paragraphs 1–9, also demonstrates that it is not a contract, but an offer, yet to be accepted. The proposal's final paragraphs, which state the City's obligations if the election were successful and its concomitant lack of obligation if it were unsuccessful clearly establish that the offer would be accepted and City bound only upon there being a successful bond election pursuant to the offer.

Caulfield's points of error are easily disposed of. It first argues that the contract's meaning was a question of fact for the jury. Caulfield's proposal clearly and unambiguously set forth the terms of its offer. That it stated "election or elections" in the final paragraph does not create ambiguity. Because the proposal was unambiguous, it was the court's duty, as a matter of law, to ascertain its meaning. *Grantham v. Rockhurst University*, 563 S.W.2d 147, 150 (Mo.App.1978).

Second, Caulfield argues that the proposal's ambiguous language and the extrinsic evidence demonstrate, as a matter of law, that the "contract" was intended to extend for more than one unsuccessful

bond election. First, the proposal is unambiguous. However, Caulfield relies on the language of the last paragraph and contends the City must retain it as financial advisor for at least two bond election attempts. Caulfield's argument is patently absurd. After a second unsuccessful election, Caulfield would again rely on that language to support its claim that it be given "another shot." This process could go on ad infinitum. The trial testimony of Norman Lewis, a municipal bond financial advisor and plaintiff's witness, also destroys Caulfield's argument. Mr. Lewis stated that, if the bond issues fail, "... *hopefully* you will continue to act as financial advisor to the City on the same project." (emphasis added). There was no evidence to support a custom that such an advisor continue work after a failed bond election. Obviously, the City had the right to abandon the project altogether after the first election. The proposal's language and the testimony at trial support the conclusion that the proposal was merely an offer. It was accepted only once by the City and, in accordance with its terms, nothing was due because the election failed. The trial court did not err in directing a verdict for respondent City at the close of appellant's case.

Affirmed.

CLARK, J., concurs.

KENNEDY, P.J., dissents in separate dissenting opinion.

KENNEDY, Presiding Judge, dissenting.

I dissent.

The plaintiff and its assignor Perry, Adams & Lewis Securities, Inc., in this case performed the duties required by their contract. There is no dispute that they performed valuable services to the defendant City, and incurred substantial out-of-pocket expense in doing so. There is no contention on the City's part that they did not perform the services in competent fashion.

The bond proposal which was ultimately adopted by the City was exactly the same proposal as the one which had been defeated in the first election which had been

prepared with the counsel and advice of plaintiff and its assignor. The second election was held within six months of the first, but the City's plans for resubmission commenced promptly after its defeat in the first election. From beginning to end it was a single project.

With the preparatory work plaintiff and his assignor had done, it is not surprising that the City, after the first election, was able to get a second financial advisor for 40 percent less than it had contracted to pay plaintiff.

Of course it is common knowledge that bond proposals for public improvements often must be submitted more than once; expert testimony was not necessary to establish that, although such testimony was given. The contract reference to "elections", in the plural, also recognizes that fact. I read nothing in this contract which requires the construction that the City was free after one election of all obligation under its contract.

The majority opinion correctly says that the City was not obliged by the contract to call the second election. If the City had not done so, the plaintiff would have had no claim under its contract. But the fact is, the second election was called. If as the majority opinion says, the contract in this case was in reality an offer to contract on plaintiff's part, requiring for its acceptance that the City call an election, I am unable to see that that analysis leads to a directed verdict for the defendant City. The fact is the City did call the second election, at which election the bond proposition was voted. In so doing, by the "offer to contract" analysis, the City accepted the plaintiff's offer.

In my opinion the judgment should be reversed and the case remanded for trial.