**LAYNE, INC., Appellant,**

v.

**James R. MOODY, Respondent.**

**No. WD 53378.**

Missouri Court of Appeals,
Western District.

Sept. 23, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 28, 1997.

Application to Transfer Denied
Dec. 23, 1997.

B. Trent Webb, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Christie Kincannon, Asst. Atty. Gen., Jefferson City, for respondent.

SPINDEN, Judge.

Layne, Inc., appeals the circuit court's decision for James R. Moody, former commissioner of the Office of Administration (OA), in Layne's suit to recover payment for well-drilling services rendered as a subcontractor of Maecorp, Inc., a now bankrupt general contractor for Missouri. Layne sued Moody personally, contending that he failed to require Maecorp to post a payment bond as required under § 107.170, RSMo 1986, when OA approved Maecorp's bid to provide hazardous substance management on an as-needed basis.[1]

We affirm the circuit court's judgment for Moody. Layne misidentifies bid documents as a public service contract. As a result, Layne did not satisfy its burden of proving that Moody, as opposed to some other state official, was responsible for the alleged violation of § 107.170.

In 1989, OA's Division of Purchasing solicited and obtained Maecorp's bid to provide the state with hazardous substance management, consultation, and clean-up services. Maecorp submitted its bid on a "Request for Proposal" prepared by OA in which Maecorp represented that it "agree[d] to provide the services and/or items, at the prices quoted, pursuant to the requirements of this document and further agree[d] that when this document is countersigned by an authorized official of the State of Missouri, a binding contract, as defined herein, shall exist between [Maecorp] and the State of Missouri." The request for proposal made clear that Maecorp was not to be the exclusive provider; it was to be one of several vendors the state could call on for services. The bid documents provided that Maecorp would provide such services as any state agency might request "at the location, at the time, and in accordance with the instructions specified by DNR, [the Department of Natural Resources,] and in accordance with the work plan ... accepted by DNR." OA accepted Maecorp's bid and referred to the acceptance as Contract № C 901448002 A1. Before accepting Maecorp's bid, OA required Maecorp to provide a $10,000 performance bond but did not require a payment bond.

In May 1992, state officials became apprehensive that chemicals had contaminated the ground water near two sites in the vicinity of Camdenton and Joplin. DNR officials[2] sent

---

1. This statute says, "It is hereby made the duty of all officials, ... commissioners, or agents of the state ... in making contracts for public works of any kind to be performed for the state ... to require every contractor for such work to furnish to the state ... a bond with good and sufficient sureties, in an amount fixed by said officials, ... commissioners, or agents of the state, ... and such bond, among other conditions, shall be conditioned for the payment of any and all materials, ... equipment and tools, consumed or used in connection with the construction of such work,

... and for all labor performed in such work whether by subcontractor or otherwise." The General Assembly amended the statute in 1993, 1994, and 1995, but the 1986 version of the statute was in effect at the time this cause of action arose. All references to this statute are to the 1986 version.

2. David Mosby, environmental specialist with DNR's Division of Environmental Quality, sent the June 3, 1992, letter. The signer of the May 28, 1992, letter was illegible.

Maecorp letters on May 28 and June 3 asking for bids in evaluating the extent of the contamination. The letters specified that construction of water wells was necessary to test for ground water contamination. The May 28 letter informed Maecorp of the projects' scope and asked Maecorp to submit "competitive price quotes" for the work. The June 3 letter informed Maecorp of changes to the projects' scope and told Maecorp that the information Maecorp supplied in response would be "evaluated and notice to proceed [would] be made by phone by 5:00 p.m. on June 8, 1992." Maecorp proceeded with the project after June 8. Layne did not establish in what manner or by whom notice to proceed was given to Maecorp, or even who selected Maecorp.

The request for proposal permitted Maecorp to subcontract for services. After DNR instructed Maecorp to proceed, Maecorp subcontracted with Layne to construct the water test wells. Layne performed as contracted and billed Maecorp for $86,057.92 for its services in August 1992. The state paid Maecorp in full for its services.[3] In January 1993, Maecorp paid Layne $10,098.70, and, in March 1993, Layne sued Maecorp for the remaining balance of $75,959.22 plus interest. Maecorp filed for bankruptcy protection in April 1993.

On May 27, 1993, Layne sued Moody alleging that he breached his duty under § 107.170 to require Maecorp to furnish a payment bond. Layne contended that had Maecorp been required to furnish a payment bond, Layne would have been protected from Maecorp's default in payment. The circuit court granted Moody's motion to dismiss for failure to state a claim upon which relief could be granted, and Layne appealed. This court reversed. *Layne, Inc. v. Moody*, 886 S.W.2d 115, 116 (Mo.App.1994). Taking Layne's allegation as true that OA had "contracted" with Maecorp, this court said, "The purpose of [section 107.170] is to provide persons furnishing labor and materials the bond security in lieu of a mechanic's lien which are not applicable to public works [in protecting laborers and material men from

non-payment]." *Id.* at 117. This court found, on the basis of Layne's petition, that the construction of water test wells was "necessary for public safety" and was, therefore, a public service covered by § 107.170. *Id.* We remanded to the circuit court for further proceedings.

On remand, the circuit court convened an evidentiary hearing before ruling for Moody. In its findings of fact, the circuit court said:

... This was a contract of convenience. The purpose of such a contract is to have services available on an as needed basis. It is not known when the contract is entered when or how often the contract will be utilized.

... Because the actual need is not known, bond requirements are based on the costs involved in one incident or use of the contract.

... A performance bond of $10,000 was required on the general contract.

... If a payment bond had been required of Maecorp it would have been in the same amount as the performance bond that was required on this project.

In its conclusions of law, the circuit court said:

... If a payment bond would have been required, it would have been in the amount of $10,000 because Layne could have only collected from the surety the amount of the bond. The state's liability is limited to $10,000.

... There was no privity of contract between the State of Missouri and Layne. Without such privity of contract, Layne is not entitled to interest at the subcontract rate of 1.5% per month or 18% per year. The state will be held responsible for interest in the amount of 9% per year, the statutory rate.

. . . .

... The interest did not begin to accrue until Layne made a demand upon the state as required under § 408.020.

On the basis of this reasoning, the circuit court concluded that Moody was not liable.

**3.** Layne did not establish which state agency paid Maecorp. The request for proposal provid-

ed that the agency which requested services would be responsible for payment.

Layne raises seven points on appeal with several subpoints. While its points are not totally lacking in merit, we affirm the circuit court's judgment for Moody because Layne misidentifies the request for proposal as a public works contract to which § 107.170 is applicable. It was not.[4]

If the agreement between OA and Maecorp was not a public works contract, then § 107.170.1 was not applicable. The statute applies only to "contracts for public works of any kind to be performed for the state."

The parties referred to the arrangement entered into by Maecorp as a "general contract" and a "contract of convenience." They were referring to Maecorp's request for proposal in which Maecorp represented that it would provide services at a specified rate if and when a state agency or department requested its services. No agency was obligated to use Maecorp's services. Indeed, the request for proposal provided that Maecorp was to negotiate further with an agency requesting its services concerning the scope of work and cost.

For an agreement to constitute an enforceable contract, "[a]n offer must be so definite in its terms, or require such definite terms in the acceptance, that the promises and performances to be rendered by each party are reasonably certain." *Brown v. Donham*, 900 S.W.2d 630, 633 (Mo. banc 1995) (citing RE-STATEMENT OF CONTRACTS § 32 (1932)). Under the terms of the "contract of convenience" between OA and Maecorp, Maecorp was to work out necessary contract terms at a later date with any state agency requesting its services. In this case, Maecorp supplied further information at the request of DNR, and DNR had to approve of Maecorp's proposal before DNR was obligated to use Mae-

corp. Because the specifics of Maecorp's performance were not reasonably ascertainable from the "contract of convenience" arrangement Maecorp had with OA, it was not an enforceable "contract," much less a contract for public work.

The most that can be said of this agreement is that Maecorp offered a bid, in essence, "an offer to contract" in which it guaranteed its prices. *Cal Caulfield and Company, Inc. v. City of Belton*, 687 S.W.2d 207, 209 (Mo.App.1984). By submitting the proposal to OA, Maecorp agreed to charge only the amounts specified in its proposal for a year. The terms of the "contract of convenience" make clear that the state was not bound under the agreement until it authorized Maecorp's particular performance. Until that time, the agreement was "not a contract, but an offer, yet to be accepted." *Id.* at 209.

We have no difficulty finding that a contract was formed when, sometime on or after June 8, 1992, DNR authorized Maecorp to proceed with the project.[5] Had Layne made a showing that OA, as opposed to DNR, entered into the contract with Maecorp for the construction of water test wells, the result might be different. In the absence of that proof, however, Layne has failed to establish that Moody is personally liable for any alleged violations of § 107.170.

We are not saying that a payment bond was not required when DNR contracted with Maecorp. We are saying that Layne has not shown that the arrangement OA had with Maecorp rose to the level of an enforceable contract for a public work. Because Layne's case rested entirely on that arrangement, the

---

4. Layne argues that in our previous consideration of the case we determined that it was a public works contract and that the law of the case should foreclose the issue. We were reviewing a motion to dismiss which meant that we considered the facts as pleaded by Layne to be true. We now consider the facts as found by the circuit court after an evidentiary hearing. In light of the facts as found by the circuit court and our review of the agreements between OA and Maecorp, and DNR and Maecorp, we no longer believe that the request for proposal was a public works contract.

5. DNR was authorized by § 260.480.4 to contract for testing and cleanup of abandoned or uncontrolled hazardous waste sites. The terms of the second letter sent by DNR to Maecorp changing the specifications for the water testing wells bid indicated that that notice to proceed (*i.e.* acceptance) would be given by telephone after the bid proposals had been reviewed. The record does not show who telephoned Maecorp with the acceptance, but under the terms of the "contract of convenience" DNR was to coordinate and to supervise all of Maecorp's services.

2

case fails, and we affirm the circuit court's judgment.

BERREY, P.J., and SMART, J., concur.